James **WILLIAMS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 43371.

Court of Criminal Appeals of Texas.

Feb. 24, 1971.

Milton L. Bankston, Midland, for appellant.

James A. Mashburn, Dist. Atty., and Joel D. Conant, Asst. Dist. Atty., Midland, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

## ON APPELLANT'S MOTION TO REINSTATE APPEAL

ROBERTS, Judge.

The record has now been perfected to show that notice of appeal was timely given in open court. The appeal is reinstated.

This is an appeal from a conviction of robbery by assault. The jury assessed punishment at life imprisonment by finding appellant was the same person who had twice before been convicted of felony offenses, less than capital.

The appellant relies on seven grounds of error.

The first three grounds of error relate to the conversation between a juror and a police officer, who was later a witness for the State.

Before Officer D. A. Mosely testified he was questioned outside the presence of the jury and the following transpired:

"Q (By Mr. Bankston: Counsel for Appellant) Would you state your name, please, sir.

"A D. A. Mosely.

"Q Mr. Mosely, I believe you have been sworn?

"A Yes, sir, I have.

"Q Put under oath?

"A Yes, sir.

\* \* \* \* \* \*

"Q You arrived here at the court house at the request of who? who called you to come up here this morning?

"A The D. A.'s office, sir.

"Q And you came up here and you sat right outside the courtroom, did you not?

"A Yes, sir.

"Q And while sitting there the jury that is trying this case went into a recess in that hall, did they not?

"A Yes, sir.

"Q And one of those jurors, one Gilbert Bates, sat down next to you?

"A Yes, sir.

"Q    And you were aware at the time that of course he was on the jury?

"A    Yes, sir.

"Q    And you engaged him in conversation?

"A    I didn't engage him sir.

"Q    Did you talk with him, sir?

"A    He asked me if I had been busy last night, and I told him I couldn't talk to him, sir.

"Q    How long did you sit and was the conversation taking place by and between you and Mr. Bates?

"A    How long?

"Q    Yes, sir.

"A    I had been sitting there for quite some time.

"Q    Isn't it a fact—you saw me come out of the courtroom, did you not?

"A    Yes, sir, I did.

"Q    And you saw me walk down to this water fountain, did you not?

"A    Yes, sir.

"Q    And get a drink of water, and then I came back down the hall, did I not?

"A    Yes, sir.

"Q    Do you deny at that time that there was a conversation taking place by and between that juror?

"A    I stated the conversation, sir.

"Q    And that's all it amounted to?

"A    Yes, sir.

"Q    I want you to be very specific, Mr. Mosely, that the only words that took place by and between you and Gilbert Bates were as follows: 'Were you busy last night?' by Mr. Bates. To-wit, you replied: 'I can't talk to you because you are a juror.'

"A    'I can't talk.'

"Q    Say it in your own words, would you, please, sir.

"A    'I can't talk to you, sir.'

"Q    And that's all that took place?

"A    Yes, sir.

"Q    And that's on your oath, Mr. Mosely?

"A    Yes, sir. He said something about the weather had been hot, and I didn't answer him, and then he asked if I had been busy, and I told him I couldn't talk to him.

"Q    What was he laughing about, Mr. Mosely?

"A    I didn't notice that, that he was laughing, sir.

"Q    You, of course, as a police officer, are well aware that if any conversation took place by and between you and this juror that it could be prejudicial to this defendant James Williams on trial in this cause?

"A    Yes, sir, that's why I told him I couldn't talk to him, sir.

"Mr. Bankston: All right, thank you, we have no further questions. I think I'm going to have to call the juror."

"Q    (By Mr. Bankston: Counsel for Appellant) State your name, please, sir.

"A    Gilbert Bates.

"Q    Mr. Bates, you are a juror?

"A    Yes, sir.

"Q    In this particular case on trial?

"A    Yes, sir.

"Q    And it involves the case of the State versus James Williams?

"A    Yes, sir.

"Q  For which you were impaneled yesterday as a juror?

"A  Yes, sir.

"Q  This morning did you have occasion to talk to a police officer?

"A  Yes, sir, but at the time I did not know that he was a witness and I sat down there and we did talk about he had worked late last night, and this being in the middle of his night, and stuff like that, but I did not discuss anything.  I'm sorry.

"Q  I understand that, Gilbert, and please understand I'm not attempting to rail you out nor is the Court or anyone else, but I would want you to tell me, and for the purposes of this record is: was Mr. Mosely the officer seated there when you all went to recess?

"A  Yes.

"Q  And did you at that time sit down next to him?

"A  I walked down to the rest room and back and sat down by him.

"Q  Of course I presume you know him?

"A  I did not know his name, I have seen him around.

"Q  All right.  And then just tell us as you recall the best you can everything that was said by and between you and Officer Mosely.

"A  We spoke and then I sat down; and he said something about getting up and this being in the middle of his night, and I said, 'Oh, did you work late, all night last night?'  And he said, 'Well, we got off at 3:30.'

"Q  By that meaning 'in the middle of his night' is that he worked until 3:30 this morning, and he had to come up here to testify here in the middle of his night, is that what—

"A  At this time I didn't know he had come up here to testify.

"Q  All right, go ahead.

"A  And we talked, and I said that this was—I told him that this was the first time I had ever been caught, that I got hung on the jury and I needed to be down there working.

"Q  What did he say to that?

"A  I don't remember his conversation.

"Q  Did he reply to it?

"A  He did say something, I think, I'm not real sure, Mr. Bankston.

"Q  All right.

"A  And then he said, 'We shouldn't—this probably won't last much longer,' or something, 'You'll be back before you know it,' or, 'to work before you know it,' or something like that.

"Q  Talking about the length of duration of this trial?

"A  Yes.

"Q  He said, 'This probably won't last very long; you'll be back to work before you know it.'?

"A  Right.

"Q  All right.

"A  And he made a comment then, he said, 'I'll probably be the last witness.'  And when he said that, he just quit talking, you know, he didn't say anything else that I remember, Mr. Bankston.

    *      *      *      *      *      *

"Q  As a result of the conversation you did learn, or course, that ultimately he was going to be a witness in the cause?

"A  I did.

"Q  And he thought it would be a short trial?

"A  This is all.

"Q And that he thought he was going to be the last witness?

"A That's right.

"Q Is there anything else that you can recall?

"A Mr. Bankston, there is not, and I'm sorry, I didn't know.

"Q I understand that, Mr. Bates. Did he at any time tell you, 'Mr. Bates, I am a witness to be called here by the State and I cannot talk to you.'

"A No."

At the conclusion of this testimony, appellant made a motion for a mistrial which was overruled by the court.

The contention is made that such conversation prejudiced the right of appellant.

Substantially the same testimony about the conversation was given by Officer Mosely and juror Bates at the hearing on the motion for new trial.

Article 40.03, of Vernon's Ann. Code of Criminal Procedure provides as follows: "New trials, in cases of felony, shall be granted for the following causes, and for no other:

\* \* \* \* \* \*

"7. Where the jury, after having retired to deliberate upon a case, has received other testimony; or where a juror has conversed with any person in regard to the case; \* \* \*."

■ The rule against jurors conversing with unauthorized persons about the case is so strong that injury to the accused is presumed. Cole v. State, 157 Tex.Cr.R. 469, 250 S.W.2d 201; Maxey v. State, 138 Tex.Cr.R. 27, 133 S.W.2d 785. This presumption, however, is rebuttable; and on motion for new trial, if the State negates this presumption by showing that either the case was not discussed or that nothing prejudicial to the accused was said, then the verdict should be upheld. Cole v. State, supra; Cox v. State, Tex.Cr.App., 216 S.W.2d 983.

This Court has always held that before a new trial is warranted, there must be injury to the accused. Lowe v. State, 88 Tex.Cr.R. 316, 226 S.W. 674; White v. State, 82 Tex.Cr.R. 286, 199 S.W. 1117.

■ In the instant case there was conversation and there was mention of being a witness in the case, but no facts of the case were discussed and no harm was shown. All facts were fully before the court, and the State discharged its burden under the rule.

■ Appellant's third ground of error relates to his attempt on cross-examination in the main trial to impeach the witness Mosely in regard to his conversation with Bates. This testimony was entirely collateral to the issues of the case, and the court did not err in excluding it. 23 Tex. Jur.2d 182, Sec. 126.

The first three grounds of error are overruled.

The appellant's last four grounds of error all relate to the argument of the State.

■ First, the appellant complains that the State argued that the appellant made an oral confession, which appellant contends is a matter outside the record. The appellant, on cross-examination of a police officer, elicited the answer that appellant had failed to deny that he was at the scene of the crime. On re-direct examination, the same witness was asked, "Q. Capt. Gideon, I believe that Mr. Bankston asked you if the defendant had repeatedly denied his commission of this offense, and your answer was no, is that correct? A. Correct." There was no objection to this testimony. The State's attorney argued that counsel for the appellant failed to mention that this witness had testified that the appellant did not deny that he had committed the offense. The appellant's complaint to this argument of the State is without merit as it is in the record.

■ Next, the appellant complains of the State's argument relating to statements by

the appellant's mother regarding his occupancy of a certain automobile. Officer Mosely testified, (1) that he asked the woman in the house if that was the appellant's residence and she replied, "his daddy lives here"; (2) that the lady told him the car in question belonged to the appellant and the appellant had gotten out of it. Based on this, the prosecutor argued that the appellant's "mother" said he had driven up in the car. We believe that this was a fair comment on the evidence properly before the jury. In any event, no objection to this argument was made, and any error was waived.

The last ground of error raised is that the State alluded to defendant's failure to testify. The writer has searched the record and finds no such allusion.

No reversible error appearing, the judgment is affirmed.