**Eddie Donald GATES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–99–00586–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 1, 2000.

Terrence A. Gaiser, Will Outlaw, Houston, for Appellant.

S. Elaine Roch, John B. Holmes, Houston, for State.

Panel consists of Chief Justice SCHNEIDER, and Justices TAFT and SMITH.[1]

## OPINION

TIM TAFT, Justice.

A jury convicted appellant of murder and assessed punishment at confinement for 25 years. We address whether: (1) the evidence is legally and factually sufficient to prove murder; (2) a juror's improper communication with a witness denied appellant a fair trial; (3) a police officer qualified as an expert in order to render an opinion that the deceased did not commit suicide; and (4) error in the exclusion of statements of the deceased was preserved in the absence of a bill of exceptions showing the substance of the statements. We affirm.

## Facts

On August 5, 1996, Sandra Hawkins (the deceased) died of a gunshot wound to the head. At the time of her death, she and appellant were in the bedroom of their apartment. The deceased was taking prescription medications for depression at the

time of her death, and she and appellant had been drinking throughout the day.

Conflicting stories were presented at trial. Appellant testified that the deceased took the gun from him while he was sitting on the bed and then shot herself. The deceased's sister, a guest in the apartment at the time of the shooting, testified that appellant shot the deceased after spending a good portion of the day threatening both women with the gun. The sister did not see the actual shooting, but ran into the bedroom immediately afterwards. She saw the appellant drop the gun from his hand as she ran into the room.

## Sufficiency of the Evidence

In his first issue, appellant challenges the legal and factual sufficiency of the evidence proving murder. Appellant argues that the evidence is more supportive of a finding of suicide than of murder.

### A. Legal Sufficiency

In reviewing a claim of legal sufficiency, this Court examines the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Lane v. State*, 933 S.W.2d 504, 507 (Tex.Crim.App.1996).

Viewing the evidence in the light most favorable to the verdict, there is ample evidence to legally support a murder verdict. Appellant spent a significant portion of the day threatening the deceased and her sister with the gun: he waved the gun in the air, pointed it at the two women, and made other threatening actions. Immediately before the shooting, appellant and the deceased entered the bedroom, and the sister heard them arguing. The sister heard the deceased ask appellant if he planned to "blow her head off" and, immediately after this statement, heard the gunshot. When the sister entered the

1. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

bedroom, she saw appellant putting down the gun. In addition to the fatal contact wound to the base of the neck halfway between the back of the neck and the right ear, the deceased sustained a wound and powder burns to a finger of her left hand. The assistant medical examiner who performed the autopsy concluded the wound was not self-inflicted. We hold this evidence is legally sufficient to prove appellant murdered the deceased.

### B. Factual Sufficiency

■ In a review of a claim for factual insufficiency, this Court looks at the totality of the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly unjust. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996).

■ Appellant's theory is that the deceased committed suicide. Appellant relies on: (1) the deceased's past medical history of depression; (2) his medical expert's testimony stating that 15% of people treated for depression commit suicide; (3) the combination of prescription medications and alcohol in the deceased's bloodstream on the day of her death; (4) his forensic expert's testimony that the location of the wound on the back of the head was not inconsistent with suicide; (5) the sworn statement the deceased's sister gave to police on the night of the shooting did not include the information that she saw appellant drop the gun after the shooting; and (6) the atomic absorption test done to determine if appellant had fired a weapon was inconclusive. Additionally, appellant points to the deceased's past violent tendencies—the police had been called to their home on a prior occasion in order to take away from the deceased a gun that she was using to threaten appellant, and the deceased had threatened to commit suicide prior to the night she died.

While the location of the wound might not be inconsistent with suicide, the assistant medical examiner testified it was not physically possible for the deceased to have killed herself. There was also evidence that appellant might have had time to wash his hands or change clothes after the shooting and before police arrived at the scene, so the inconclusive atomic absorption test is not a significant factor. The 15% suicide rate, when viewed in the light of the other testimony and the unlikely location of the wound, is not a compelling percentage. It was for the jury to decide the credibility of, and how much weight to give, each individual's testimony, and we conclude that their decision was not contrary to the overwhelming weight of the evidence.

The evidence is both legally and factually sufficient to support a finding of murder. We overrule issue one.

### Improper Juror Communication

■ In his second issue, appellant complains about a juror who spoke with the son of the deceased in the elevator on the way up to the court. The juror noticed that the man was wearing a gold ribbon on his coat, and she asked him what the ribbon signified. He told her that it meant his mother had been murdered and he was in court that day to testify about it. When they got off the elevator, the juror realized the man was coming to testify in the same court where she was a juror. Upon learning of the conversation, the trial court questioned the juror about it. The trial court cautioned the juror not to talk to anyone, but denied appellant's request for a mistrial. When the jurors were brought back into the courtroom, the trial court warned them not to speak with anyone in the hallway because they may be told something they were not entitled to hear.

■ A juror is not permitted to converse with anyone about the case on trial except in the presence, and with the permission, of the court. TEX.CODE.CRIM. P. art. 36.22 (Vernon 1981). When a juror engages in unauthorized conversation, in-

jury is presumed. *Alba v. State,* 905 S.W.2d 581, 587 (Tex.Crim.App.1995). The presumption is rebuttable by a showing that the case was not discussed or that nothing prejudicial to the accused was said. *Id.*

In *Ites v. State,* this Court reversed for failure to rebut presumed injury when the defendant's son had been running down in front of the jurors saying that if he had to spend an hour with his daddy, he would kill himself. 923 S.W.2d 675, 676 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). Ites was being tried for aggravated sexual assault of his daughter, and his son had been sworn as a witness. *Id.* at 676.

In *Williams v. State,* a police witness conversed with a juror, indicating that the trial would probably not last much longer and that the officer would probably be the last witness. 463 S.W.2d 436, 437–40 (Tex. Crim.App.1971). The Court of Criminal Appeals held that the presumption of harm was rebutted because no facts of the case were discussed and no harm was shown, after the trial court had fully developed the facts of the unauthorized communication. *Id.* at 440.

Here, the jury had already participated in the jury selection process where the trial court and both attorneys had made clear that appellant was being tried for murder. Under these circumstances, the only new information the deceased's son communicated was that he was a witness in the case. This information is very similar to the kind of information communicated in *Williams.* In contrast, the content of the information conveyed by the communication in *Ites* was clearly prejudicial to the defendant because the jurors were informed that the defendant's own son considered the defendant a horrible monster. This was new information clearly prejudicial to the defendant. Because this case is more like *Williams* than *Ites,* we hold that the presumption of harm was rebutted.

We overrule issue two.

## Expert Testimony

In his third issue, appellant contends that a police officer, who was not qualified as an expert, was allowed to testify regarding an ultimate issue in the case. Appellant argues that Officer Mayes' qualifications did not meet the requirements of Rule of Evidence 702, which states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702.

At the time of trial, Kenneth Mayes had worked as a police officer for the City of Seabrook for 11 years. While in high school, he worked at a funeral home. Mayes testified that in both lines of work, he had observed a number of bodies resulting from suicides. Over objection, Mayes testified he had never seen a suicide committed by someone who had shot himself in the back of the neck. Over objection, Mayes also testified that in his experience, suicides were committed by shooting between the eyes, in the mouth, under the chin, or in the temple. Appellant's objection, on the basis of no expertise, to the prosecutor's question about whether the gun falls far from the victim's hand, was sustained. When the prosecutor asked Mayes whether, in his opinion and based on his experience and the evidence in this case, the deceased had committed suicide, appellant again objected, on the grounds that Mayes lacked sufficient training. The trial court overruled the objection, and Mayes testified that, in his opinion, the deceased's death was not a suicide. Appellant bases his complaint on the admission of this opinion. Appellant emphasizes his complaint by noting that Mayes admitted on cross-examination that he was not an expert in the field of crime scene reconstruction because he had not had the years of training required. Mayes made it clear that his testimony was based

solely on his firsthand experience, and not the education required for one to be a certified expert.

We are thus faced with the interesting question of whether a witness who admits he is not an expert by certification, can nevertheless be an expert by experience so as to be qualified to give an expert opinion under rule 702. We hold that Mayes's experience with suicides both while working in a funeral home and as a peace officer resulted in a specialized knowledge of suicides that would help the trier of fact understand the evidence regarding whether it is a usual occurrence for a person who commits suicide to shoot herself in the back of the head. *See Reece v. State*, 878 S.W.2d 320, 324–25 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (police officer with seven and a half years experience, in which he made numerous narcotics arrests, was allowed to testify as an expert about defendant's actions as a drug seller). Based on his knowledge and experience, Officer Mayes was also qualified to give his opinion that this shooting was not a suicide.

We overrule issue three.

### Exclusion of Deceased's Statement

■ In his fourth issue, appellant argues that evidence that the deceased wanted to marry him should not have been excluded. During the trial, appellant asked two witnesses whether the deceased ever said she wanted to marry appellant. The trial court sustained the prosecutor's hearsay objections both times. After the second objection was sustained, defense counsel stated that the evidence was offered as a state of mind exception to the hearsay rule. The trial court, after questioning the relevance of the evidence, sustained the State's hearsay objection. Appellant made no bill of exceptions showing what the witnesses would have said, if allowed to answer.

Even assuming the witnesses would have testified that the deceased had said that she wanted to marry appellant, there is still an insufficient record to know when the deceased made the statements. There is thus an insufficient record to determine if the statements were sufficiently proximate in time to the events in this case as to be of any probative force. Under these circumstances, we are unable to say that the trial court abused its discretion in excluding the statements. *See Garza v. State*, 846 S.W.2d 936, 939 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd).

We overrule issue four.

### Conclusion

We affirm the judgment of the trial court.