**Affirmed as Modified; Opinion Filed March 19, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

### No. 05-19-01135-CR

_____

**CORNELIUS ASHLEY PALMER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1814053-V**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Schenck

A jury found appellant Cornelius Ashley Palmer guilty of continuous sexual

abuse of a child under the age of 14 and assessed punishment at sixty-five years

confinement. In four issues, appellant urges the trial court erred in (1) failing to

instruct the jury that appellant was not eligible for parole, (2) (3) in allowing the

State to show clips of a video recording of a family trip into the woods during the

guilt-innocence phase of trial, and (4) in denying his request for a mistrial based

upon alleged juror misconduct. In one cross issue, the State requests that we reform

the judgment to show that sex-offender registration requirements apply and that the

complainant was twelve years old at the time of the offense. We modify the trial court's judgment and affirm as modified. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

The complainant, L.P., was born on September 24, 2004. She is appellant's biological daughter. L.P. lived with her maternal grandmother until appellant gained custody of her at the age of seven. She then began living with appellant and his girlfriend. Appellant and his girlfriend later had a son, C.P. Appellant's other daughter from another relationship, O.P., lived with appellant's aunt Linda. For a time, O.P. stayed at appellant's house on the weekends.

After L.P. entered middle school, appellant began saying things to her that made her uncomfortable, including that she was not allowed to have a boyfriend because he was her boyfriend, and that her legs looked "nice" when she shaved them. Appellant repeatedly asked L.P. if she thought he was attractive and beat L.P. as a regular form of punishment, including when he found out that she had a boyfriend.

Appellant also began touching her in ways that made her uncomfortable. The first instance L.P. recalled occurred when she was twelve years old on a summer night after the family returned home from a party. Appellant and his girlfriend were separated at that time. L.P. recalled that appellant was very drunk and made her sleep downstairs with him on a couch in the living area. Appellant touched L.P. in

a manner all concede to be unlawful that night and, from that point forward, it seemed to L.P. like the abuse occurred almost every day.

L.P. recalled that on October 1, 2017, she, appellant, and C.P. visited appellant's brother. They went hiking in the woods and appellant and his brother shot guns. Appellant made a recording during the outing and posted it on a social media site. While driving home, appellant unlawfully touched L.P. Once they arrived home, the abuse continued until L.P. told appellant to stop. Appellant became angry and stormed off. The abuse stopped for a couple of months but resumed sometime around Christmas.

Shortly thereafter, L.P. told her sister O.P. about the abuse. O.P. relayed her conversation with L.P. to her great aunt Linda, and Linda called L.P. to ask if the allegations were true. L.P. admitted there were true and Linda told L.P. she needed to tell someone. L.P. responded, stating she was not ready to do so because she was afraid of her father. On January 17, 2018, L.P. told her school counselor about the abuse. L.P. was in the seventh grade at that time. The counselor reported the abuse and L.P. was placed into the custody of Child Protective Services after being interviewed at the Child Advocacy Center.

Detective Michael Hernandez of the Cedar Hill Police Department observed L.P.'s forensic interview while other detectives made contact with appellant. Appellant agreed to accompany Detective Hernandez's partner to the Cedar Hill police state for an interview. After being read his *Miranda* rights, appellant agreed

–3–

to speak with Detective Hernandez and denied L.P.'s allegations of sexual abuse. Appellant appeared to be intoxicated or under the influence of some substance during the interview. Detective Hernandez asked appellant about the outing into the woods that L.P. had described during her interview. He confirmed that he, his brother, L.P., C.P. and another family member were present that day and that he and his brother discharged firearms. At the conclusion of the interview, Detective Hernandez placed appellant under arrest.

At trial, the State's witnesses were L.P., O.P., Linda, Detective Hernandez, Kimberly Skidmore—the forensic interviewer, Pamela Simmons—the forensic nurse examiner at Cook Children's Medical Center who performed an examination on L.P., and Dr. Katrina Cook—an expert in the area of child sexual abuse. Appellant's sole witness was an attorney who filed a lawsuit at appellant's request in 2018 to establish the paternity of O.P. Through that attorney appellant attempted to suggest Linda may have been motivated to coax L.P. into making the allegations of abuse because of the threat appellant posed to her continued possession of O.P. That attorney acknowledged that the suit was not served on Linda and had been dismissed. At the conclusion of the guilt-innocence phase of trial, the jury found appellant guilty of continuous sexual abuse of a child.

During the punishment phase of trial, the State called L.P., Linda, Sarah Switzer—a licensed professional counselor who had provided therapy for L.P., and Darrell Doty—an investigator with the Dallas County District Attorney's office,

who compared fingerprint cards provided to him, to establish the fact that appellant had prior convictions for possession of one gram or more but less than four grams of cocaine and fraudulent use or possession of an ID.

During the punishment phase, the parties notified the trial court of a conversation between Lewisville Police Officer Jeffrey Persinger, who the State planned to call as a witness, and a juror. Appellant's counsel asked the trial court to declare a mistrial. The trial court conducted a hearing outside the presence of the jury and, after hearing testimony from five witnesses, denied appellant's motion. The trial court also denied appellant's requests to remove two jurors and to strike the officer from the State's witness list. Thereafter, the State introduced evidence of appellant's June 9, 2018 arrest for driving while intoxicated and the discovery of a loaded firearm in the vehicle through Sergeant Craig Barnhardt of the Lewisville Police Department, rather than Officer Persinger. Finally, Darren Hodge, an investigator with the Dallas County District Attorney's office, testified about weapons depicted in various photographs admitted into evidence.

The jury assessed punishment at sixty-five years' confinement.

## DISCUSSION

### I.    Jury Instruction

In his first issue, appellant claims that the trial court erred in denying his request for a jury instruction advising that he is not eligible for parole and that any

sentence assessed against him would be served in its entirety.[1] The State asserts the trial court was not required to give the jury instruction because appellant was found guilty of continuous sexual abuse of a child.

In reviewing a claim of jury charge error, we first determine whether error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If no error exists, the inquiry ends there. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). If error exists, we analyze that error for harm. *Middleton*, 125 S.W.3d at 453.

The trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. Normally, if a jury-charge instruction is not derived from the code, it is not "applicable law" under article 36.14. *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007).

Article 37.07, section 4 of the code of criminal procedure provides the instructions that trial courts are required to give juries to inform them about the law of parole. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4; *see Taylor v. State*, 233

---

[1] Notwithstanding its denial of appellant's request, the trial court informed appellant's counsel that he could talk about appellant's ineligibility for parole during his closing argument. Appellant's counsel did so.

S.W.3d 356, 359 (Tex. Crim. App. 2007). These instructions explain the concepts of good time and parole, state the defendant's eligibility for parole in terms of calendar years or sentence portion, and state that no one can predict whether parole or good conduct time might be applied to the defendant. *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). However, the requirements of Article 37.07, section 4 do not apply to a conviction arising under section 21.02 of the penal code. TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4. Appellant was convicted of continuous sexual abuse of a child, a violation of section 21.02 of the penal code. *See* TEX. PENAL CODE ANN. § 21.02(b). Thus, the instructions to inform a jury about the law of parole contained in article 37.07 do not apply to appellant.

In a case similar to the one presented here, a defendant convicted of continuous sexual abuse of a child complained on appeal that the trial court erred when it denied his request to include an instruction in the punishment charge advising the jury that he would not be eligible for parole. *Cross v. State*, No. 09-11-00406-CR, 2012 WL 6643832, at *4 (Tex. App.—Beaumont Dec. 19, 2012, pet. ref'd) (mem. op., not designated for publication). In that case, our sister court of appeals concluded the trial court did not err by refusing the defendant's requested instruction concerning his ineligibility for parole because his requested instruction was a special, non-statutory instruction. *Id.* at *5.

We likewise conclude the instruction appellant requested about his ineligibility for parole was a special, non-statutory instruction. In the absence of a

–7–

statutorily required instruction that appellant was not eligible for parole, the court's charge to the jury omitting this instruction was not erroneous. *Walters*, 247 S.W.3d at 214. Accordingly, we overrule appellant's first issue.

## II. Admission of Evidence

In his second and third issues, appellant urges the trial court erred in admitting clips of a video recording depicting him using profanity and firing a handgun during a trip into the woods with L.P. and others on a day L.P. claimed one of the instances of abuse occurred because they were irrelevant and posed a risk of unfair prejudice.

"We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Under that standard, we must uphold the trial court's ruling so long as it is within the zone of reasonable disagreement. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).

The trial court admitted the video recording of the trip into the wood and allowed the State to show the jury five video clips from the recording. The first clip shows the individuals who participated in the outing into the woods and commentary from appellant about their trip, which includes some profanity. In the second clip, appellant is facing the camera and gunshots are heard in the background. Appellant fires a handgun in the third clip. In the fourth clip, L.P. and C.P. are sitting on the

–8–

ground and appellant comments L.P. looks like a star and asks if she is wearing make-up before instructing her to change C.P.'s diaper. In the final clip, appellant again uses profanity and indicates they would be out in the woods for approximately another hour "until 8:30 or so."

Appellant first contends that this evidence should not have been admitted because it "was not necessary to the jury's understanding of any sexual offense that happened later that night."

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. TEX. R. EVID. 401. The State was required to prove two or more acts of sexual abuse against L.P. during a period of thirty or more days. L.P.'s outcry and trial testimony described an incident of sexual abuse occurring on October 1, 2017, after a day of hiking. Video evidence confirming her account of the individuals present and the timeline of the events that day was relevant to the State's case in chief. *See id.* (evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action). Accordingly, we overrule appellant's second issue.

Relevant evidence is admissible unless specifically prohibited. *Id.* 402. Relying on Rule 403 of the rules of evidence, appellant claims any probative value of the video shown to the jury is greatly outweighed by the unfair prejudice it created. Rule 403 favors admission of relevant evidence and carries a presumption

that relevant evidence will be more probative than prejudicial. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003).

In considering a Rule 403 objection, the trial court must balance the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against (1) any tendency of the evidence to confuse or distract the jury from the main issues, (2) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (3) the likelihood that presentation for the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–642 (Tex. Crim. App. 2006).

Rule 403 does not require that the trial court perform the balancing test on the record. *Hitt v. State*, 53 S.W.3d 697, 706 (Tex. App.—Austin 2001, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have performed a Rule 403 balancing test and determined the evidence was admissible. *Id.* There is a presumption that relevant evidence is more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). In reviewing the trial court's balancing determination under Rule 403, we are to "reverse the trial court's judgment rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

This case involved a delayed outcry of sexual abuse. Forensic evidence was not available due to the timing of the outcry. Appellant denied committing the

offense. The specific portions of the video were chosen to corroborate L.P.'s account of the abuse and the surrounding circumstances and were thus probative.

Any tendency of the evidence to suggest a decision on an improper basis because appellant used profanity during a family outing or that he engaged in recreational shooting was minimal in this case involving sexual abuse of a child.

The video did not distract from the main issue at trial or have any tendency to be given undue weight by a jury ill-equipped to evaluate the probative force of the evidence. Evidence corroborating details of L.P.'s account of the events surrounding one of the incidents of abuse was not a distraction from the central issue of abuse. Moreover, the presentation of the video clips did not consume an inordinate amount of time. The length of the clips in total, was less than five minutes.

Having considered the relevant facts, we conclude the trial court could have reasonably determined that the prejudicial effect of the video clips did not substantially outweigh their probative value. We therefore conclude the trial court did not abuse its discretion in overruling appellant's Rule 403 objection. We overrule appellant's third issue.

## III. Alleged Juror Misconduct

In his fourth issue, appellant claims the trial court erred in failing to grant a mistrial based on juror misconduct. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's

ruling, considering only those arguments before the court at the time of the ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Where alleged juror misconduct is asserted, questioning jurors who allegedly participated in misconduct is a less drastic remedy than a mistrial. *Ocon*, 284 S.W.3d at 886.

A juror must make decisions at the guilt and punishment phases using information obtained in the courtroom: the law, the evidence, and the trial court's instructions. *Granados v. State*, 85 S.W.3d 217, 235 (Tex. Crim. App. 2002). "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. ANN. art. 36.22. The primary goal of article 36.22 is to insulate jurors from outside influence. *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex. Crim. App. 1983). If a violation is shown, the effectiveness of possible remedies will be determined in part by whether the conversation influenced the juror. *Ocon*, 284 S.W.3d at 884.

"A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Ocon*, 284 S.W.3d at 884. To invoke this presumption, however, the defendant must first show the communication involved matters concerning the defendant's trial.

–12–

*Chambliss*, 647 S.W.2d at 266. The State may rebut the presumption of harm by showing that the defendant has not in fact been injured, i.e., that the case was not discussed or that nothing prejudicial about the accused was said. *See Gates v. State*, 24 S.W.3d 439, 443 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that the State rebutted the presumption of harm when the victim's son communicated with a juror prior to his testimony at trial because the only new information the son conveyed to the juror was that he was a witness in the case). When determining whether the State sufficiently rebutted the presumption of harm, the reviewing court views the evidence in the light most favorable to the trial court's ruling and defers to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor. *Quinn v. State*, 958 S.W.2d 395, 401–02 (Tex. Crim. App. 1997).

During the punishment phase of trial, the parties notified the trial court of a conversation between a potential State witness and a juror. The trial court conducted a hearing outside the presence of the jury during which five witnesses testified. Those witnesses were Officer Jeffrey Persinger, the juror who spoke to the officer ("Juror 1"), another juror who heard and participated in a portion of the conversation ("Juror 2"), and two other jurors who were questioned about over hearing a reference to the conversation in the jury room.

Officer Persinger testified that he spoke to a gentleman in the hallway outside the courtroom earlier that morning and when he realized the man was a juror in the

case, left the area, and informed the prosecutor of the conversation. Officer Persinger indicated he conversed with the juror for approximately fifteen minutes. Officer Persinger described the subject matter of the conversation as follows:

> He came in, sat down in the hall directly across from me. He looked over, he goes, oh, you're from Lewisville, I live in Coppell. So we talked about living in the city. He mentioned that his wife is a -- a high school teacher. We started talking about kids, how they are nowadays, they're not like what we were growing up, where, you know, discipline and everything else, how that has changed throughout the years. We talked about how many officers the Coppell Police Department has, how many we have. We then talked about the FARO scanners, how we use those on crime scenes while working accidents. After that, we start -- started talking about gun safety, how, you know, nowadays, you have all these mass shootings, but when we were kids, we'd -- we would go to school with our guns in our vehicles, get out of school, go hunting. He then mentioned, what are you here for. I pointed to the court. He goes, I'm here for the same thing. And about 30 seconds after that, I got up and left.

Officer Persinger also testified that they discussed firearm and gun safety and that he knew the man who taught the juror's concealed handgun course. Officer Persinger testified that he did not discuss the case with the juror or even say he was there to testify; instead, he gestured toward the courtroom. Officer Persinger indicated another man participated in a portion of the conversation about laser scanners. He did not see a juror badge on either man.

Juror 1 testified that he had a conversation lasting "[l]ess than 10 minutes" with an officer outside the courtroom. He indicated there were a few other people outside the courtroom as well and that another juror participated in a portion of the conversation regarding laser scanning. He described the conversation as "a hundred-

–14–

percent small talk" and described the conversation about firearm class and firearm safety as follows:

> You know, a lot of our neighbors, you know, took the class just so we can be educated, educated on how -- how it works, and, you know, and understand how -- how to protect, you know, ourselves. I said it'd be kind of neat to teach little -- to teach young kids the rules and -- and how that works so that everyone has a better understanding of safety, and he kind of agreed. He goes, back in the old days, you know, we didn't have those things. Back when I grew up, he goes, we'd have a shotgun on the back of the truck, we'd be driving down the road. I go, times have changed. He goes, yes.

He also testified about the conclusion of the interaction with the officer, stating that when the officer pointed to the door of the courtroom, he said, "oh, okay, so I think our conversation's over."

Juror 1 indicated that he then walked away with the other juror and did not talk to the other juror anymore after that. In response to questioning by the trial court, Juror 1 testified that nothing about the experience that morning would cause him "to not be fair to one side or the other." He initially stated that he would believe the officer when he testified, but then clarified that his mind was "very open" and answered affirmatively when the trial court asked if he would listen to what the officer said, and "if you believe it, you'll believe it, and if you don't believe it, then you won't."

Juror 2 acknowledged that he sat outside the courtroom near Juror 1 and a police officer earlier that morning. He sat outside the courtroom for "between 5 to 10 minutes at the most," while he ate a banana. He testified that Juror 1 was speaking

to the officer when he sat down near them and he joined in a portion of the conversation about laser technology because he utilized similar technology in his profession. He did not talk about firearms or a concealed handgun course and did not hear any discussion of those topics. He walked away to dispose of his banana peel and the officer was gone when he returned.

In response to questioning from appellant's counsel, Juror 2 stated he thought the officer seemed like a "good guy" and formed the opinion that the officer was trustworthy. Juror 2 indicated that, while they were in the jury room, Juror 1 referenced the police officer and whispered to him that "he felt like he shouldn't have had that conversation." He admitted it was possible Juror 1 spoke louder than a whisper but stated no one in the jury room "heard it, or nobody appeared to hear it, or react to it, or anything like that."

Juror 2 identified the two jurors who were closest to him when Juror 1 spoke to him in the jury room and indicated that he did not see them react. Juror 2 also indicated that he would listen to the officer's testimony to decide if he was telling the truth, that he was "open and persuadable" regarding the officer's testimony, and that he could set the conversation aside, listen to the officer's testimony, and determine whether he believed the testimony to be credible and truthful or not.

One of the two jurors identified by Juror 2 testified that he was late to court that morning and did not hear "two jurors speak with each other about a conversation that they might have had with a potential witness in [the] case." Likewise, the other

–16–

juror identified by Juror 2 denied hearing a conversation in the jury room about a conversation with a potential witness.

Appellant's counsel requested a mistrial based on juror misconduct and "State communication with a juror" "without the Defense being present and outside of court." He characterized Juror 1 as "very defensive" and claimed he lied to the court about mentioning the conversation in the jury room. He also argued that the juror "said twice that he had formed an opinion for the officer's truthfulness." The prosecutor responded that a mistrial was not an appropriate remedy and that juror misconduct had not been proven. She further argued that she did not "believe there was any intentional lying" by Juror 1 and reminded the court that he said his mind was persuadable. The State offered that "at the very most" the trial court could excuse Juror 1 as disabled if the court did not agree that he was "still persuadable" regarding the officer's testimony and credibility. The trial court denied appellant's motion for a mistrial.

Thereafter, appellant's counsel requested that Juror 1 be struck from the jury because "he's been compromised" as well as the removal of Juror 2. The State argued that both jurors were still qualified to serve on the jury. The trial court denied appellant's requests to remove the jurors. The trial court also denied appellant's request to strike the officer from the witness list.

Having reviewed the record, we conclude appellant failed to show that the communication at issue involved matters concerning appellant's trial. *See*

*Chambliss*, 647 S.W.2d at 266. Further, while Jurors 1 and 2 initially said that they found the officer truthful, both jurors clarified that they would listen to the testimony with an open mind and reserve judgment. In any event, the State did not call Officer Persinger and ultimately presented evidence regarding appellant's arrest for driving while intoxicated and unlawful possession of a firearm by a felon through Sergeant Barnhardt.

Based upon the particular facts of this case and the evidence presented to the trial court, we conclude the trial court did not abuse its discretion by denying appellant's motion for mistrial. We overrule appellant's fourth issue.

## IV.    Modification of Judgment

In a single cross issue, the State requests that we modify the judgment. This Court may modify the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd).

The State initially requests that we modify the judgment to show the sex-offender registration requirements apply. The judgment shows appellant was convicted of continuous sexual abuse of a child pursuant to section 21.02 of the penal code. TEX. PENAL CODE ANN. § 21.02. An offense under section 21.02 is a "reportable conviction" under chapter 62 of the Texas Code of Criminal Procedure, which governs the sex-offender registration program. TEX. CODE CRIM. PROC. ANN.

art. 62.001(5)(A).  A person with a reportable conviction is required to register as a sex offender.  *Id.* art. 62.051(a); *Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012).   When a person is convicted of an offense for which registration for a sex offense is required under chapter 62, the judgment must include (1) a statement that the registration requirements of that chapter apply to the defendant and (2) a statement of the age of the victim.  TEX. CODE CRIM. PROC. ANN. art. 42.01 § 1(27).

The judgment does not state appellant is required to register as a sex offender, and lists "N/A" as the age of the complainant.  Because appellant is subject to the sex-offender registration requirements, the judgment is incorrect.  We sustain the State's cross issue.

### CONCLUSION

We modify the trial court's judgment to reflect that the sex-offender registration requirements apply and that L.P. was twelve years old at the time of the offense.  As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
191135F.U05

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CORNELIUS ASHLEY PALMER,
Appellant

No. 05-19-01135-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F-1814053-V.
Opinion delivered by Justice
Schenck. Justices Smith and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

> To reflect that sex-offender registration requirements apply and that
> the complainant was twelve years old at the time of the offense.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 19th day of March, 2021.