

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00051-CR

_____

DEONTA CHILDS-PAYTON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F19-1494-16; Honorable Sherry Shipman, Presiding

May 19, 2021

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, Deonta Childs-Payton, appeals from his conviction by jury of the first-degree felony offense of continuous sexual abuse of a young child[1] and the resulting

---

[1] TEX. PENAL CODE ANN. 21.02 (West 2019). An offense under this section is a felony of the first degree, punishable by imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years. TEX. PENAL CODE ANN. 21.02(h) (West 2019).

sentence of thirty years of imprisonment. Appellant challenges his conviction through four issues. Issues one and two challenge the trial court's decision to remove a seated juror and seat a released juror after the completion of voir dire but prior to the commencement of trial on the merits. Issue three contends Appellant's constitutional right against self-incrimination was violated and issue four contends the trial court erred in excluding certain evidence pertaining to his good character. We will affirm.[2]

**BACKGROUND**

Appellant does not challenge the sufficiency of the evidence supporting his conviction. Consequently, we will relate only those facts necessary to disposition of his appellate issues.

The State presented the testimony of several witnesses including that of the child victim A.S., members of A.S.'s family, Appellant's father, a sexual assault nurse examiner, a forensic interviewer, a child protective services investigator, three police officers, and a crime scene technician. Appellant presented the testimony of his mother and his friend. Appellant also testified on his own behalf.

At the time of trial, A.S. was ten years old and Appellant was twenty-four. Trial testimony showed that when A.S. was six years old she told her grandmother that her mother's boyfriend's son, Appellant, touched both her vagina and her butt and that he

---

[2] Originally appealed to the Second Court of Appeals, sitting in Fort Worth, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Third Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

penetrated her about a quarter of an inch with his penis.[3] A.S. told her grandmother these incidents happened almost daily. A nurse testified to A.S.'s statements to her during a physical examination and her report was admitted into evidence. A.S. told the nurse the incidents of sexual contact "started a long time ago." During his testimony, however, Appellant repeatedly denied the allegations. Following presentation of the evidence, the jury found Appellant guilty of continuous sexual abuse of a young child and assessed punishment as noted.

### ANALYSIS

### ISSUES ONE AND TWO—REPLACEMENT OF EXCUSED JUROR ON JURY

In Appellant's first two issues, he argues the trial court erred when it replaced a sitting juror with another member of the venire panel who had already been excused. The State argues the trial court did not err and that if any error existed, it was harmless. We agree with the State's contention.

At the end of voir dire, the jury chosen to sit for Appellant's case was called. One member of the venire panel, Benoit Payette, was selected for the jury and his name was announced. However, when his name was called, another member of the venire panel, James Zeimet, believing his name had been announced, stood up and walked to the jury box. Payette, believing he had perhaps misheard his name, remained seated. Zeimet had, in fact, been struck by the defense but because he mistakenly believed his name had been called, he was seated and sworn in as a juror. The trial court released the remainder of the venire panel, including Payette. It then gave the petit jury some

---

[3] The child used the words "booty" and "gut" to refer to genitalia. It is apparent from the record that the child was referring to female and male genitalia.

abbreviated instructions and dismissed everyone for the evening without commencing the trial on the merits. Payette went home and spoke with his wife about what had occurred.

The next day, prior to any further proceedings in the trial and prior to the entry of Appellant's plea or the presentation of any evidence or arguments of counsel, Payette returned and explained to the court what had occurred. He confirmed with the trial court that he did not attempt to learn about the case and did not discuss the case with anyone. He said he spoke with his wife only about the "process" of jury selection and she asked whether he had told the court about the sexual assault on his ex-wife. They also discussed whether he should return to court and explain what had happened during jury selection.

After confirming that Payette should have been seated and Zeimet excused, the trial court expressed its intent to replace Zeimet with Payette. The State did not advance an objection to the proposed procedure. Defense counsel, however, expressed a concern that Payette's discussion with his wife was "probably a violation of the instructions" given by the trial court to the jury. The trial court then asked Payette additional questions concerning the details of what he discussed with his wife. The trial court then said, "I do not believe that will -- while it may not follow the spirit of what the Court intended, I don't think that it is going to interfere with the juror's ability to be a fair and impartial juror in this case. And I will overrule the objection and swear the juror in. And then after that, I will release James Michael Zeimet, who was struck by the Defense." At that point, Payette was sworn in as a juror and Zeimet was released.

4

On appeal, Appellant argues "there is nothing to indicate that the court had the authority to remove a juror after the trial had started and substitute another juror in their place." Appellant further argues that Payette violated the trial court's instructions to the jury regarding discussing the case with others and because the trial had started and the venire panel had been released, the defense was not afforded the opportunity to exercise a strike on Payette and the opportunity to seat a "less objectionable juror." The State argues the trial court did not err because none of the possible bases for exclusion of a juror applied. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16 (West 2006). Further, the State contends, Appellant was not harmed by any alleged error.

We agree that none of the bases for exclusion set forth in article 35.16 apply here and Appellant has not pointed us to any other reason why Payette should be excluded as a juror. Further, because Zeimet had been struck by the defense, he was not properly seated on the jury in the first place. Payette, on the other hand, had been selected and thus, was the proper juror who would have been seated if the mistake had been known earlier. Therefore, the only issue before us is whether Payette's discussion with his wife reversibly harmed Appellant. We conclude it did not.

When a juror converses with an unauthorized person about the case, "injury to the accused is presumed" and a new trial *may* be warranted. *Bokemeyer v. State*, 355 S.W.3d 199, 203 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Robinson v. State*, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991)). To invoke this presumption, the defendant must show the communication involved matters concerning the defendant's trial. *Bokemeyer*, 355 S.W.3d at 203 (citation omitted). We presume harm even when the communication does not rise to the level of a full-blown conversation or discussion of the

5

specifics of a given case. *Id.* (citing *McIntire v. State*, 698 S.W.2d 652, 659 (Tex. Crim. App. 1985)). However, the State may rebut this presumption of harm by showing that the defendant has not been injured, i.e., "that the case was not discussed or that nothing prejudicial about the accused was said." *Bokemeyer*, 355 S.W.3d at 203 (citing *Green v. State*, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992); *compare Gates v. State*, 24 S.W.3d 439, 443 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (holding that State rebutted presumption, when victim's son communicated with juror prior to his testimony at trial, because only new information son conveyed to juror was that he was witness in case), *with Ites v. State*, 923 S.W.2d 675, 676 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (reversing trial court's judgment because State failed to rebut presumption of harm when defendant's son ran in front of jurors saying that if he had to spend an hour with his father, he would kill himself; defendant was being tried for aggravated sexual assault of his daughter, and son had been sworn as witness)). "If evidence is in the record that rebuts the presumption of harm, it should be considered, whether presented by the State or the defense." *Bokemeyer*, 355 S.W.3d at 203 (citing *Alexander v. State*, 919 S.W.2d 756, 767 (Tex. App.—Texarkana 1996, no pet.)). When determining whether the State sufficiently rebutted the presumption of harm, we view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor. *Bokemeyer*, 355 S.W.3d at 204 (citing *Quinn v. State*, 958 S.W.2d 395, 401-02 (Tex. Crim. App. 1997)).

Here, it is undisputed that Payette spoke about some aspects of Appellant's trial with his wife. Thus, harm is presumed even though a "full-blown conversation of discussion about the specifics of the case" does not appear from this record to have

6

occurred. Instead, the record shows that Payette and his wife only discussed the jury selection process and the ethical dilemma he faced knowing that he was supposed to be one of the jurors seated to hear that case. Furthermore, the record contains evidence rebutting that presumption of harm. After defense counsel expressed his concern about Payette's discussion with his wife, the trial court engaged in the following colloquy with Payette:

> THE COURT: So I need to just ask you a few more questions about the conversation that you had with your wife.
>
> JUROR PAYETTE: Okay.
>
> THE COURT: Could you tell me what you said to her?
>
> JUROR PAYETTE: I described the type of case and questions that were asked of me.
>
> THE COURT: Okay. That the lawyers were asking you?
>
> JUROR PAYETTE: Yes.
>
> THE COURT: Okay. Did she respond to you when you reported that to her?
>
> JUROR PAYETTE: She asked me if I brought up the subject that I brought up in court yesterday. The subject.
>
> THE COURT: Okay.
>
> JUROR PAYETTE: Which my ex-wife was assaulted while I was married to her by a person that we don't know.
>
> THE COURT: Other than your telling her that you went through the voir dire process, what the charge was, and some of the questions you were asked and what you told the prosecutors regarding your ex-wife's experience with sexual abuse, was there any other discussion between you and your wife?
>
> JUROR PAYETTE: No. Just what should I do about -- I wasn't sure whether I was expected or not, so we talked about that.

7

THE COURT: What you should do about coming here today?

JUROR PAYETTE: Yes.

THE COURT: Okay. All right. If you will step back out for a moment, please.

The record shows that in Payette's conversation with his wife, "the case was not discussed" nor was there anything said that was pertinent to the offense itself or "prejudicial about the accused." *See Bokemeyer*, 355 S.W.3d at 203. Indeed, there is no indication that Payette specifically mentioned Appellant or that he knew any details of the case that he could have revealed. To the contrary, Payette presents himself as a very conscientious juror who voluntarily appeared to verify whether he had misunderstood his name being called as a juror. Reviewing the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's resolution of historical facts and its determinations concerning credibility and demeanor, we do not find error or harm here. Consequently, we overrule Appellant's first and second issues.

### ISSUE THREE—ERROR CONCERNING DETECTIVE'S TESTIMONY

In his third issue, Appellant contends his constitutional rights under the Fifth Amendment to the United States Constitution[4] and article 1, section 10 of the Texas Constitution[5] were violated when a detective testified that it was Appellant's job "to actually take part in the investigation." The State argues Appellant failed to object to this

---

[4] U.S. CONST. amend. V.

[5] TEX. CONST., art. 1, § 10.

testimony and has failed to preserve the issue for appellate review. We agree with the State's contention.

Generally, in order to preserve an issue for appellate review, a timely and specific objection is required. TEX. R. APP. P. 33.1(a). Furthermore, a reviewing court should not address the merits of an issue that has not been properly preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010) (op. on reh'g) (per curiam).

During cross-examination by defense counsel, a detective testified he offered Appellant an opportunity to be interviewed by police. Defense counsel and the detective engaged in the following question and answer sequence:

Q. Other than talking to [Appellant], what else did you do to try to see if you could find the truth?

A. I wait for him to come and clear his name. That is his job. My job is to be objective and get the information from him in order for him to have his side of the story.

Q. It's not his job to clear his name though, is it?

A. It is his job to actually take part in the investigation. It is if somebody is accusing him of something, yes, ma'am. I would.

Defense counsel did not object to the testimony he elicited from the detective that he now complains about on appeal. Nor did he take any steps to make the trial court aware of his complaint, i.e., that this testimony violated his constitutional rights. Accordingly, Appellant has failed to preserve this issue for our review. TEX. R. APP. P. 33.1(a)(1)(A); *Wilson*, 311 S.W.3d at 473-74. We resolve Appellant's third issue against him.

9

**ISSUE FOUR—ERROR IN ADMISSION OF EVIDENCE CONCERNING APPELLANT'S GOOD CHARACTER**

By his fourth issue, Appellant contends the trial court erred in excluding evidence of his good character despite the fact that the trial court later reconsidered its ruling and offered Appellant the opportunity to present favorable character evidence after both sides had rested and closed. Appellant contends the "flow of the defense was destroyed" and "the timing was too late and the harm was irreparable." The State disagrees, arguing the trial court properly provided an opportunity to Appellant to present the evidence he now claims was erroneously excluded but he did not take that opportunity.

Appellant called his mother to testify on his behalf. During the defense's presentation of its case, the following exchange took place:

DEFENSE COUNSEL: Now, you said that Deonta has grown up around kids, always been around kids?

APPELLANT'S MOTHER: All of his life.

DEFENSE COUNSEL: Does he have siblings?

APPELLANT'S MOTHER: Yes. He has two younger siblings, a sister and a brother.

DEFENSE COUNSEL: And the allegations that have been made in this case, are they completely opposite of the character of [Appellant]?

PROSECUTOR: Objection.

THE COURT: Hang on.

PROSECUTOR: At this point, I'm going to object to the relevancy. And then I'm also going to object to character testimony at this point.

THE COURT: Sustained.

DEFENSE COUNSEL: Have you ever seen anything in his interaction with children that concerned you?

10

APPELLANT'S MOTHER: No.

PROSECUTOR: Objection.

* * *

PROSECUTOR: Objection. Again, we're both into something that lacks relevance in this particular case and is an attempt to try and put character evidence in front of this jury. That is improper.

THE COURT: Sustained.

* * *

THE COURT: Court will instruct the Defense not to ask questions regarding the Defendant's character . . . at this phase of the trial. And the jury is instructed to disregard any testimony or questions that have been asked.

The parties then had a discussion at the bench during which the State said it did not believe the defense should be permitted to present character evidence when Appellant's credibility had not been attacked. Appellant's counsel disagreed, arguing she was permitted to present evidence of Appellant's good character in this type of case. The trial court concluded evidence of good character was not admissible and sustained the State's objection.

The defense then presented the testimony of a friend of Appellant, after which, Appellant testified. After the parties had rested and closed, the trial court stated that the parties and the court had an

> Off-record conference with the lawyers in which I indicated that I would reconsider a ruling I made yesterday regarding the possible character evidence that was being presented by the Defense through the Defendant's mother and offered the Defense the opportunity to revisit the questions that they had attempted to ask yesterday that the Court sustained objections to. And further ascertained that the Defendant's mother is still here present in the courtroom should the Defense choose to call her. I assume since the Defense has rested and closed you do not intend to call Mr. Childs-Payton's mother?

11

Defense counsel responded, "Given the timing of the conversation that we had with the Court, we chose to proceed as we did." The court then asked whether either side needed to discuss anything else. Both said "no." No further discussion was had, and the parties proceeded to deliver closing arguments.

On appeal, Appellant argues the trial court's error in excluding the good character evidence at the time it was presented through Appellant's mother was incurable by the time it decided to reconsider its ruling and allow Appellant to present the evidence it previously excluded. He argues that the "flow of the defense had been destroyed," his counsel had been admonished in front of the jury, and the jury had been instructed to disregard the testimony and questions concerning Appellant's good character. Further, he complains of the trial court's statement in its instruction to the jury "at this phase of trial" which, he says, indicated to the jury that "a punishment phase was coming."

The record before us does not show Appellant presented any of these complaints to the trial court at the time the trial court offered him the opportunity to present the excluded evidence nor did he do so when the trial court revisited the issue before closing arguments. He neither took the opportunity to present the excluded evidence of which he now complains, nor did he present his complaints before the trial court when the trial court could have addressed them. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Darcy v. State,* 488 S.W.3d 325, 329 (Tex. Crim. App. 2016) (citing TEX. R. APP. P. 33.1(a)(1)(A)) ("[o]rdinarily, the appealing party must have raised a particular complaint at trial before he can raise it on appeal"). As such, we resolve Appellant's final issue against him.

**CONCLUSION**

Having overruled each of Appellant's four issues, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.