

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0280-22

### JOE LUIS BECERRA, Appellant

### v.

### THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## BRAZOS COUNTY

NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, WALKER, and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion. KEEL, J., filed a dissenting opinion in which KELLER, P.J., and SLAUGHTER, J., joined.

In this case, the trial court inadvertently allowed an alternate juror

to go back into the jury deliberation room and participate in a vote on

the issue of guilt with the jury.  This raises several issues.  Does this violate constitutional and statutory provisions setting petit jury composition in district courts to twelve people?  How should courts analyze the alternate juror's participation in light of the statutory provision prohibiting any "person" from being with the jury while it is deliberating or conversing with the jury about the case on trial?  Should proof of the alternate juror's presence or participation during deliberations give rise to a presumption of harm?  The court of appeals, in addressing these issues, ultimately held there was no reversible error. We hold that there was statutory error and remand the case for the court of appeals to conduct a statutory harm analysis.

As we will explain in greater detail below, the presence of an alternate juror during a petit jury's deliberations does not violate the constitutional or statutory limits placed upon the size of a jury.  At the time these provisions were enacted, there was no such thing as an "alternate juror" so the constitutional and statutory provisions regarding the size of a jury have never included the concept of alternate jurors as members of the "petit jury."  An alternate juror does not become a member of the jury until the trial court places the alternate on the jury.

However, the alternate juror's presence during deliberations in this case violated the statutory prohibitions against a "person" being with

the jury while it is deliberating and conversing with the jury about the case. To the extent the court of appeals concluded otherwise, it erred. While we have previously held that such violations can give rise to a presumption of harm, this presumption is, in practice, indistinguishable from an ordinary harm analysis. Further, our reference to this presumption for such violations pre-dated the promulgation of appellate rules governing review for harm and are ultimately inconsistent with the purpose of a harm analysis. To the extent that the court of appeals failed to apply a presumption of harm when conducting its harm analysis—it did not err.

However, the court of appeals does not appear to have conducted a harm analysis regarding the alternate's presence during deliberations because it concluded that there was no error in allowing the alternate to be present with the jury during deliberations. And, in conducting a harm analysis regarding the alternate juror's participation in jury deliberations, the court of appeals appears to have conflated the question of prejudice for purposes of determining admissibility of juror affidavits with the question of statutory harm. Furthermore, the court of appeals erroneously failed to consider the entirety of the juror's affidavit when it conducted its harm analysis because the court of appeals erred to conclude that only a portion of the juror's affidavit

concerning the statutory violation was admissible.  Consequently, we will remand the case for the court of appeals to conduct a statutory harm analysis regarding the statutory violations at issue in this case.

## Background

This case arose from an altercation that allegedly resulted in Appellant shooting and killing a man named Jose Guardado-Rivera in his home.  Although no firearm was ever recovered, there was some evidence that Appellant asked his girlfriend to bring him a gun prior to the shooting.  Shortly before the shooting, three men were seen walking into Guardado-Rivera's home and then a gun shot was heard.  Shortly after the shooting, Appellant was detained while walking away from Guardado-Rivera's home. A forensic chemist tested Appellant's hands and found they contained gunshot residue.

The State charged Appellant with unlawful possession of a firearm by a felon.[1]  Additionally, the indictment alleged that during the commission of the offense Appellant used or exhibited the firearm as a deadly weapon by discharging it in the direction of Jose Guardado-Rivera.[2]  Appellant entered a plea of not guilty and proceeded to trial

---

[1] Tex. Penal Code § 46.04.

[2] Appellant was initially charged in count one of the indictment with the murder and aggravated assault of Guardado-Rivera but the State proceeded to trial only on the unlawful possession of a firearm by a felon charge in count two.

before a jury. A petit jury of twelve was selected and sworn in as well as one alternate juror.

Following closing arguments, the jury retired to deliberate. The alternate juror retired to the jury room with the regular jury without any party realizing the issue. Approximately forty-six minutes later, the State realized there were thirteen people in the jury room and notified the bailiff. The bailiff notified the trial court, and the court immediately had the bailiff remove the alternate juror.

The court held a hearing regarding the alternate juror.[3] At the hearing, the court and parties discussed the implications of this Court's holdings in *Trinidad v. State*.[4] The trial court concluded that Appellant may have waived any error by failing to object when the alternate retired to the jury room with the jury. The State requested that the trial court instruct the jury to disregard anything said by the alternate juror and to restart deliberations. The parties agreed in substance to the trial court's proposed instruction to the jurors, but Appellant requested a mistrial based on the presence of the juror. Appellant conceded that he

---

[3] A jury note seeking clarification on the deadly weapon special issue was received after the alternate juror's removal and was also briefly discussed at this hearing.

[4] *Trinidad v. State*, 312 S.W.3d 23, 28 (Tex. Crim. App. 2010) (concluding that an alternate juror's presence in the jury room and participation in deliberations did not violate constitutional and statutory requirement that juries be composed of twelve jurors).

had no indication of harm at that time and did not seek to question the alternate or jurors on the matter.

The trial court denied Appellant's request for a mistrial. The jury was then given the following instruction:

> Members of the jury, jury deliberations began at 9:45 a.m. At 10:31 a.m., the Court realized that the alternate juror, [alternate juror], was allowed into the jury room by mistake and [alternate juror] was at that time asked to separate from the jury. [Alternate juror] has been placed in a separate room over here and will continue to serve as the alternate juror in this case. He simply cannot be present during deliberations of the 12 jurors. You are to disregard any participation during your deliberations of the alternate juror, [alternate juror]. And following an instruction on this extra note that the Court received, you should simply resume your deliberations without [alternate juror] being present.[5]

The jury resumed deliberations. The jury thereafter returned a verdict of guilty, and each juror confirmed the verdict when polled individually.

Appellant filed a motion for new trial. Appellant alleged that his constitutional right to a jury composed of twelve people was violated by the alternate juror's participation in deliberations and a preliminary vote on Appellant's guilt. Appellant also alleged the juror's participation violated Articles 33.01 and 33.011 of the Code of Criminal Procedure. Appellant further alleged that the alternate juror's presence in the jury

---

[5] The trial court also advised the jury that it did not understand the issue raised in the jury's note, but the jury was free to clarify in a subsequent note.

room and his improper participation in a preliminary vote on Appellant's guilt violated Article 36.22, which prohibits non-jurors from talking with jurors about the case or being with the jury during deliberations.

As to harm, Appellant alleged that based on the alternate juror's level of participation the constitutional error was harmful.[6]  Regarding the statutory violations, Appellant acknowledged Rule 44.2 of the Rules of Appellate Procedure[7] would ordinarily govern, but he argued that an established violation of Article 36.22 shifted the burden to the State to show lack of harm.  In support of his motion for new trial, Appellant attached an affidavit from one of the regularly seated jurors.  In relevant part, the affidavit stated:

> I was a juror in *State of Texas v. Joe Becerra* . . . During the jury deliberations in the case, the individual later identified by the trial judge as the "alternate juror" voted on the verdict of "guilty" ultimately returned by the jury. The alternate juror's presence in the jury room was not discovered until after the verdict vote was taken on guilt by the jury. After this vote, there was a question the jury had concerning the special issue submitted to the jury by the trial judge and when the bailiff appeared to collect the question, the bailiff realized the alternate juror was present in the jury room. Thereafter, alternate juror participated in the deliberation until the court bailiff came and collected us and brought us

---

[6] Tex. R. App. P. 44.2(a) (if record reveals constitutional error in a criminal case, judgment must be reversed unless the error did not contribute to the conviction beyond a reasonable doubt).

[7] Tex. R. App. P. 44.2(b) (non-constitutional error that does not affect substantial rights must be disregarded).

into the courtroom.[8] After the alternate juror was excused the remaining 12 jurors did not revote on the issue of guilt as the verdict vote taken while the alternate juror was present in the jury room was unanimous.

The State filed an objection to the admission of the juror's affidavit pursuant to Rule 606(b).[9] The trial court held a hearing on Appellant's motion for new trial. The trial court overruled the State's objection concluding the affidavit falls within an exception to the prohibition on juror testimony concerning whether there was an outside influence upon any juror.[10] The trial court ultimately denied Appellant's motion for new trial concluding that Appellant's complaints about the alternate juror were waived and that, even if preserved, any error was harmless.

## Direct Appeal and Remand

On appeal, Appellant complained that his constitutional right to a jury composed of twelve people under Article V, sec. 13 of the Texas Constitution was violated, Articles 31.011, 33.011, and 36.22 of the Code of Criminal Procedure were violated, and the trial court erred in

---

[8] The reporter's record establishes that the alternate juror was removed from the jury room before the entire jury was brought into the courtroom and given the instruction detailed above. Further, the State and trial court both stated on the record that the jury note was received after the alternate juror was removed.

[9] Tex. R. Evid. 606(b) (juror may not testify about jury deliberations unless there was an improper outside influence on any juror or to rebut a claim that juror was unqualified to serve).

[10] *Id.*

failing to grant a mistrial or new trial. The court of appeals concluded that Appellant's constitutional and statutory claims were not preserved because the objection and motion for mistrial were not timely made when the alternate retired to deliberate with the jury.[11] Appellant petitioned this Court to review the lower court's determination that these claims were defaulted. We granted review and held that because Appellant objected as soon as he became aware of the error, he had preserved his constitutional and statutory claims for review.[12] We reversed and remanded for the court of appeals to consider the merits of Appellant's complaints.

Upon remand, the court of appeals held that the trial court did not abuse its discretion by denying Appellant's request for a mistrial or motion for new trial. At the time of the request for a mistrial, the court reasoned there had been no showing that the alternate juror participated in deliberations or communicated with the regular jurors about the case.[13] Thus, while Article 36.22 prohibits persons from being with the jury while it deliberates or conversing with jurors about the

---

[11] *Becerra v. State*, No. 10-17-00143-CR, 2019 WL 2479957, at *2 (Tex. App.—Waco June 12, 2019, pet. granted).

[12] *Becerra v. State*, 620 S.W.3d 745, 748-49 (Tex. Crim. App. 2021).

[13] *Becerra v. State*, No. 10-17-00143-CR, 2022 WL 1177391, at *3 (Tex. App.—Waco April 20, 2022, pet. granted).

case on trial (except in the presence and by permission of the court), Appellant failed to meet his burden to raise a presumption of harm at the time of the motion for mistrial.[14]

In considering the juror's affidavit attached to Appellant's motion for new trial, the court of appeals held that only a portion of it was admissible under Rule 606(b).  According to the court of appeals, the portion of the affidavit regarding what transpired after the alternate was removed from the jury room (*e.g.*, that no revote was taken) was inadmissible because "it did not involve evidence regarding the outside influence or its impact on any juror or the deliberations."[15]  The court of appeals also observed that nothing in the remainder of the affidavit indicated whether the alternate juror participated in deliberations beyond voting on guilt or innocence prior to his removal.[16]

The court of appeals then held that Article V, sec. 13 of the Texas Constitution and Article 33.01(a), both of which provide for a jury composed of twelve persons in district courts, were not violated because the "ultimate verdict" rendered was voted on by a panel of twelve

---

[14] *Id*.

[15] *Id.* at *4.

[16] *Id*. ("However, there was nothing included [in the affidavit] about whether or not the alternate juror otherwise participated in deliberations, such as whether the alternate juror attempted to convince another juror of [Appellant's] guilt or the effect of some other aspect of the evidence.").

jurors.[17]    In considering Appellant's claim that Article 36.22 was violated, the court of appeals found "no authority has established a hard rule that the presence of the alternate jurors in the jury room during deliberations is absolutely improper."[18]    Thus, the court of appeals concluded that the trial court did not abuse its discretion in denying the motion for new trial.  According to the court of appeals, neither the alternate juror's presence nor his initial participation in voting was sufficient to create a reasonable probability that the alternate juror's outside influence had a prejudicial effect.[19]

## Petition for Discretionary Review

Appellant filed a petition for discretionary review, asking this Court to review the court of appeals' decision and remand to the trial court for a new trial or, alternatively, to remand to the court of appeals with further instruction.  We granted review on the following three issues:

1. Art[icle] 36.22 of the Code of Criminal Procedure provides no person shall be permitted to be with a jury while it is deliberating. The petit juror affidavit admitted in [Appellant's] Motion for New Trial hearing established the alternate juror was present and participated in deliberations and voted on the verdict. What status, if any, does Art. 33.011(b) confer on alternative juror service permitting the presence and/or participation of the alternate

---

[17] *Id*. at *5 (citing *Trinidad*, 312 S.W.3d at 28).

[18] *Id*.

[19] *Id.*

during petit jury deliberations and did the alternate's act in voting violate Art. 36.22?

2. Rule 606(b) of the Texas Rules of Evidence prohibits evidence of "incidents that occurred during the jury's deliberations." The uncontroverted petit juror affidavit admitted at [Appellant's] Motion for New Trial hearing attested the alternate juror voted on the verdict, and after removal and instruction no further vote was taken. Is the evidence that no further vote was taken an incident during deliberations admissible under Rule 606(b) and, if excludable, must Rule 606(b) yield to the need to prove a violation of Art. V, Sec. 13 of the Texas Constitution and Art. 33.01 of the Texas Code of Criminal Procedure?

3. This Court has long held a rebuttable presumption of harm exists if a facial violation of Art. 36.22 of the Texas Code of Criminal Procedure is shown. The Court of Appeals acknowledged [Appellant's] admitted evidence that the alternate juror voted on the verdict was admissible as outside evidence under Rule 606(b)(2)(A) of the Texas Rules of Evidence. Did the failure of that Court to apply the presumption based on this evidence so far deviate from accepted law so as to call for the exercise of this Court's jurisdiction?

Generally, Appellant maintains that he is entitled to a new trial because the alternate juror's participation in deliberations violated Article V, sec. 13 of the Texas Constitution as well as Articles 33.01, 33.011 and 36.22 of the Code of Criminal Procedure. He also argues that the court of appeals erred by failing to apply a presumption of harm in relation to the alleged violation of Article 36.22. We review a trial

court's denial of a motion for a mistrial and a denial of a motion for new trial under an abuse of discretion standard.[20]

## Standard of Review

Under the abuse of discretion standard, we do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable.[21] A trial judge abuses his discretion when no reasonable view of the record could support his ruling.[22] As we have recently reaffirmed, the trial court is the exclusive judge of the credibility of the evidence presented in connection with a motion for new trial.[23] Regardless of whether the evidence is controverted, a trial court's ruling will only be reversed for an abuse of discretion, that is, if it is arbitrary or unsupported by any reasonable view of the evidence.[24]

## Analysis

---

[20] *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017) (motion for new trial); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (motion for mistrial).

[21] *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014); *accord Burch*, 541 S.W.3d at 820 (trial court's ruling on a motion for new trial must be upheld if it is within the zone of reasonable disagreement).

[22] *Burch*, 541 S.W.3d at 820*.*

[23] *Najar v. State*, 618 S.W.3d 366, 372 (Tex. Crim. App. 2021).

[24] *Id.*

A defendant's personal right to a jury trial, the composition of a twelve-person jury, and the prohibition against outsiders interacting with the jury are three legal concepts that have developed in different ways in Texas.  The right to a jury trial has evolved as a right personal to the defendant, while the question of how large the jury should be was originally set by statute.  The prohibition against outsiders interacting with the jury has always been a statutory prohibition, even as the right to a jury trial developed as a personal constitutional right.

## Right to A Jury, a Jury of Twelve, and Jury Secrecy

There is little in the history of the development of the trial by jury in a criminal case to provide insight into how the jury came to be generally fixed at twelve jurors.  As the United States Supreme Court has observed:

> Some have suggested that the number 12 was fixed upon simply because that was the number of the presentment jury from the hundred from which the petit jury developed. Other, less circular but more fanciful reasons for the number 12 have been given, 'but they were all brought forward after the number was fixed,' and rest on little more than mystical or superstitious insights into the significance of '12.'  Lord Coke's explanation that the 'number of twelve is much respected in holy writ, as 12 apostles, 12 stones, 12 tribes, etc.,' is typical.  In short, while sometime in the 14th century the size of the jury at common law came to be fixed generally at 12, that particular feature of the jury system appears to

have been a historical accident, unrelated to the great purposes which gave rise to the jury in the first place.[25]

The Court noted that its earlier decisions had always assumed that a jury of twelve, what it referred to as an "accidental feature of the jury," had been immutably codified into the federal constitution as part of the right to a jury trial.[26]  But according to the Court, "the fact that the jury at common law was composed of precisely 12 is a historical accident, unnecessary to effect the purposes of the jury system and wholly without significance 'except to mystics.'"[27]  Even viewing the number twelve as emanating from the penumbra of a personal right to a jury, the common-law requirement of twelve jurors was an arbitrary limit with no intrinsic value.[28]

---

[25] *Williams v. Florida*, 399 U.S. 78, 87-90 (1970) (internal citations omitted).

[26] *Id.* at 90.  Similarly, Texas has long recognized that a twelve-person jury originated in common law. *See, e.g., Bullard v. State*, 38 Tex. 504, 505 (1873); *Randel v. State*, 219 S.W.2d 689, 692-93 (Tex. Crim. 1949) ("The right to a trial by jury arose in the common law . . . [i]t has been held in practically all our different state courts that such a trial contemplated that the jury must be composed of twelve men indifferent between the prisoner and the sovereign; from the vicinage where the offense was supposed to have been committed; must be unanimous and uninfluenced by aught save the testimony . . .").

[27] *Id.* at 102 (quoting *Duncan v. Louisiana*, 391 U.S. 145, 182 (1968) (Harlan, J. dissenting)).

[28] Indeed, the Court rejected the suggestion that a twelve-person jury gives either the defense or the State any particular advantage.  As the Court explained, "[i]t might be suggested that the 12-man jury gives a defendant a greater advantage since he has more 'chances' of finding a juror who will insist on acquittal and thus prevent conviction.  But the advantage might just as easily belong to the State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal." *Id.* at 101.  In a footnote, the Court acknowledged that a significant increase in the size of the jury, such as an increase from twelve jurors to one hundred, would undoubtedly be more advantageous to a defendant, but it clarified that a small difference in size, such as a decrease from twelve to six jurors, would be unlikely to afford any perceptible advantage to either side.  *Id.* at 101, n. 47.

In Texas, the personal right to a jury trial was first recognized in the Texas constitution even as the size of the jury was left to statute. Starting in 1836, Texas has included a personal right to a jury trial in every version of its constitution.[29] However, the rule that a felony jury consist of twelve jurors started as a statutory requirement.[30] As a constitutional requirement, the remedy for situations in which a trial court impaneled a jury outside composition requirements was for reviewing courts to render the entire proceedings void, a practice consistent with the view that such violations deprive the jury of the authority to act.[31] The prohibition against being with the jury or

---

[29] Repub. Tex. Const. of 1836, Declaration of Rights 6, 9, *reprinted in* 1 H.P.N. Gammel, *The Laws of Texas 1822-1897*, at 1083 (Austin, Gammel Book Co. 1898); Tex. Const. of 1845, art. I, §§ 8, 12; Tex. Const. of 1861, art. I, §§ 8, 12; Tex. Const. of 1866, art. I, §§ 8, 12; Tex. Const. of 1869, art. I, §§ 8, 12; *but see Peak v. Swindle*, 4 S.W. 478, 479-80 (Tex. 1887) (discussing the inquiry into the ratification of the Constitution of 1869); Tex. Const. of 1876, art. 1, §10.  A criminal defendant also has a personal right to a jury trial under the federal constitution.  *See* U.S. CONST. amend. VI.

[30] *See* Act approved August 26, 1856, 6th Leg., *reprinted in* 2 H.P.N. Gammell, *The Laws of Texas 1822-1897* (Austin, Gammell Book Co. 1898) (originally codified in Article 539 of the Code of Criminal Procedure); *see also Walker v. State*, 42 Tex. 360, 374 (Tex. 1874) ("The law of the State, as contained in the code, is as plain as it can be written in separating the duties of the judge and of the jury, and in defining exactly the respective duties of each in a criminal trial, all in harmony with and to carry out that provision of our Constitution which declares 'the right of trial by jury shall remain inviolate. The only mode of trial upon issues of fact in the District Court is by a jury of twelve men, unless in cases specially excepted.'")

[31] *See, e.g., Ogle v. State*, 63 S.W. 1009, 1010 (Tex. Crim. App. 1901) (interpreting Article V, sec. 13 of the Texas Constitution to hold that an indictment returned by a grand jury composed of thirteen people was void so that a subsequent prosecution under a valid indictment did not result in a double jeopardy violation).

conversing with it about the case has always arisen from statutory provisions starting with the first Code of Criminal Procedure in Texas.[32]

To be sure, all these different provisions developed alongside and informed each other.  But that history does not imbue the formal requirement of twelve jurors in felony cases with any talismanic significance.  If there were any such significance, there would not have been any need for a statutory provision setting the jury composition at twelve because the requirement would have already been regarded as a necessary part of the personal right to a jury trial.[33]

**Alternate Jurors Are Not Part of the Composition of the Jury**

Considering the text and history of the relevant constitutional and statutory provisions as well as the common-law and statutory origins of the twelve-person jury, Article V, sec. 13 of the Texas Constitution and Article 33.01 of the Code of Criminal Procedure address exactly what they appear to address—the size of the jury.  Article V, sec. 13 of the Texas Constitution refers to the composition of the jury and uses the

---

[32] *See* Act approved August 26, 1856, 6th Leg., reprinted in 2 H.P.N. Gammell, *The Laws of Texas 1822-1897* (Austin, Gammel Book Co. 1898) (codified in Article 607 of the Code of Criminal Procedure: "The Sheriff shall take care that no person converses with a juryman after he has been impaneled to try a criminal action, except in the presence and by permission of the Court.")

[33] Appellant did not argue at trial and does not argue on appeal that the alternate juror's participation in jury deliberations violated his right to a jury trial under the Sixth Amendment of the federal Constitution or Article I, §. 10 of the Texas Constitution.

word "composed" which refers to the formation of the jury.[34]  Article 33.01 is specifically titled "Jury Size."[35]  These provisions do not contain references to "alternate jurors," nor do they contain terms that suggest that an alternate juror becomes a member of the jury if he or she participates in a jury's "ultimate verdict."  A jury is necessarily composed before it retires to deliberate.

Moreover, these constitutional provisions were enacted prior to the statutory provisions authorizing a trial court's selection and use of alternate jurors.  In light of the plain text and the historical context of these provisions, an alternate juror's participation in jury deliberations does not convert a twelve-person jury into a thirteen-person jury in violation of Article V, sec. 13 or Article 33.01.  Participation in deliberations by an alternate juror establishes an outside influence on the jury not a change in the composition of the jury.

The Texas Constitution currently provides in relevant part:

Grand and petit juries in the District Courts shall be composed of twelve persons, except that petit juries in a criminal case below the grade of felony shall be composed of six persons; but nine members of a grand jury shall be a quorum to transact business and present bills.  In trials of civil cases in the District Courts, nine members of the jury,

---

[34] Tex. Const. art. V, Sec. 13. *See* Merriam-Webster's Collegiate Dictionary 1095 (11th Ed. 2020) (defining compose as "to form by putting together"); Webster's II New College Dictionary 230 (1999) (defining compose at "to create by putting together").

[35] Tex. Code Crim. Proc. art. 33.01(a).

concurring, may render a verdict, but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict. [36]

This provision was ratified in the Texas Constitution of 1876, which remains in force today.[37] It refers only to the jury and its composition without reference to the defendant. It was amended in 2001 to make the text gender neutral,[38] and again in 2003 to provide that petit juries in criminal cases below the grade of felony be composed of six persons rather than nine.[39] None of these amendments alter the meaning of "petit juries" contained in the text of the Texas Constitution.

Article 33.01 of the Code of Criminal Procedure codifies this constitutional requirement as follows:

(a) Except as provided by subsection (b), in the district court, the jury shall consist of twelve qualified jurors. In the county court and inferior courts, the jury shall consist of six qualified jurors.

---

[36] Tex. Const. art. V, Sec. 13.

[37] Tex. Const. art. V, § 13 interp. Commentary (West 2007) (noting prior to ratification, if a juror was to die or become ill during trial, or for any other reason was unable to serve, it necessitated a retrial and the ratification sought to prevent the delay and additional cost of a retrial by allowing a trial to continue without the incapacitated juror).

[38] Tex. Const. art. V, Sec. 13 (amended 2001).

[39] Tex. Const. art. V, Sec. 13 (amended 2003).

(b)  In a trial involving a misdemeanor offense, a district court jury shall consist of six qualified jurors.[40]

This provision was originally enacted in 1965 and contained no reference to the number of jurors required for a misdemeanor trial in district court.[41]  Article 33.01 was amended in 2003 to address those situations by adding subsection (b).[42]  As with Article V, sec. 13 of the Texas Constitution, the amendment to the statute does not alter the meaning of the word "jury" as originally drafted.

Both Article V, sec. 13 of the Texas Constitution and Article 33.01 of the Code of Criminal Procedure pre-date the enactment of Article 33.011 of the Code of Criminal Procedure, the statutory provision that creates "alternate jurors."  First enacted in 1983, the text of the alternate juror statute makes clear that an alternate juror exists "in addition" to the "regular jury."[43]  Though this statute, entitled "Alternate Jurors," does refer to alternate jurors as "jurors," the context of the statute makes clear that the jurors are not considered part of the

---

[40] Tex. Code Crim. Proc. art. 33.01(a).

[41] Acts 1965, 59th Leg., ch. 722 § 1 (1966), *amended by* Acts 2003, 78th Leg., ch. 466, § 1 (eff. Jan 1, 2004).

[42] Acts 2003, 78th Leg., ch. 466, § 1 (2004).

[43] Tex. Code Crim. Proc. art. 33.011(a); Acts 1983, 68th Leg., ch. 775, § 2 (1983), *amended by* Acts 2007, 80th Leg., ch. 846, § 1 (eff. Sept. 1, 2007).

"regular jury."[44] The statute clarifies that they sit "in addition" to the

regular jury and the statute specifically clarifies that they are "alternate

jurors."[45] An alternate juror is not a member of the regular jury until a

trial court makes the determination that a sitting juror is disabled or

disqualified and the trial court then replaces a sitting juror who becomes

unable to perform his or her duties with an alternate juror.[46] Article

33.011 provides in relevant part:

> (a) In district courts, the judge may direct that not more than four jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. In county courts, the judge may direct that not more than two jurors in addition to the regular jury be called and impaneled to sit as alternate jurors.
>
> (b) Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered

---

[44] *Id.*

[45] *Id*.

[46] Tex. Code Crim Proc. arts. 33.011(b), 36.29; *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012) ("The trial court has discretion to determine whether a juror has become disabled and to seat an alternate juror.").

a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.[47]

Prior to 2007, this statutory provision required alternate jurors to be discharged after the jury retired to consider its verdict.[48]  The statute was amended in 2007 to require the discharge of alternate jurors after the jury had rendered a verdict on guilt and, if applicable, the amount of punishment.[49]  This case presents an unintended consequence of that amendment.

Looking at the text of the constitutional and statutory provisions, an "alternate juror" does not alter the composition of the petit jury even if the alternate erroneously participates in jury deliberations.[50]  The Texas Constitution limits the size of the petit jury to twelve people and provides that a jury of less than twelve may render a verdict if one or more (but no more than three) jurors are unable to carry out a juror's duty.  That's it.  Statutes allowing a juror to be replaced by an alternate juror were enacted later, but the statutory provision authorizing the use of alternate jurors still does not transform an alternate juror into a

---

[47] Tex. Code Crim. Proc. art. 33.011.

[48] Tex. Code Crim. Proc. art. 33.011 (1983), *amended by* Acts 2007, 80th Leg., ch. 846, § 1 (eff. Sept. 1, 2007).

[49] Acts 2007, 80th Leg., ch. 846, § 1 (2007).; *see also* House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B. 1086, 80th Leg., R.S. (2007).

[50] *Trinidad*, 312 S.W.3d at 28.

member of the regular jury. It is only when the alternate juror replaces a member of the jury that the alternate juror can be said to be a member of the regular jury. The only way a district court runs afoul of the constitutional and statutory provisions setting the number of jurors is to impanel a jury of greater or fewer than twelve jurors in a felony case. That the district judge chooses to qualify alternate jurors does not alter the composition of the regular jury.

We have previously stated that the presence of an alternate juror in the jury room during deliberations, even when the alternate juror participates in those deliberations, does not violate the constitutional and statutory twelve-person jury requirement as long as only the twelve members of the petit jury voted on the ultimate verdict received.[51] In *Trinidad v. State*, we considered two consolidated cases in which trial courts allowed an alternate juror to be present for, and to participate in, jury deliberations.[52] In each case, the trial court knowingly retired the jury, including the alternate, to begin deliberations, instructing the jury

---

[51] *Id.*

[52] *Id.* at 24.

that the alternate juror would be a part of their deliberations but would not vote on the verdict unless a regular juror became disabled.[53]

In *Trinidad*, we held no constitutional violation occurred under these circumstances because the alternate jurors were not allowed to vote on the "ultimate verdict" even though the alternate jurors were allowed to participate in jury deliberations.[54]  We did not explain what constitutes the "ultimate verdict" as it was not necessary to the disposition of the case.[55]  We supported this language by citing to cases involving juries that had been impaneled with less than twelve jurors.[56] Appellant now relies upon this aspect of *Trinidad* to argue that, although twelve jurors "were in the box" when the verdict was received, the alternate juror in this case participated in the only vote that apparently occurred in this case.  Appellant essentially argues that there is a

---

[53] *Id.* at 24-25 (in both cases, the trial court, in instructing the jury, referenced the 2007 amendment to Article 33.011, which provided that alternate jurors shall not be discharged until after the verdict is received).

[54] *Id.* at 28.

[55] *Id.* ("As long as only the twelve regular jurors voted on the verdicts that the appellants received, it cannot be said that they were judged by a jury of more than the constitutionally requisite number.").

[56] *Id.*; *see, e.g., Hatch v. State*, 958 S.W.2d 813, 815 (Tex. Crim. App. 1997) (concluding a defendant, who agreed to proceed on a jury of eleven, can waive his constitutional right to a jury of twelve);  *Roberts v. State*, 957 S.W.2d 80, 81 (Tex. Crim. App. 1997) (remanding for reconsideration in light of *Hatch* where court of appeals held that requirement of jury composed of twelve members could not be waived); *Harrell v. State*, 980 S.W.2d 661 (Tex. Crim. App. 1998) (requirement of jury composed of twelve members can be, and was, expressly waived).

constitutional violation in this case because the alternate juror participated in a vote regarding Appellant's guilt during jury deliberations and that vote became the jury's "ultimate verdict."

But Appellant's focus on our reference in *Trinidad* to the jury's "ultimate verdict" is a distraction from the actual holding of that case. As we noted in *Trinidad*, the error in allowing alternates to be present with the regular jurors during their deliberations "is more usefully conceived of as an error in allowing an outside influence to be brought to bear on the appellants' constitutionally composed twelve-member juries."[57] We went on to agree with the court of appeals that such error, if any, "would be controlled by Article 36.22, which is the statute that expressly prohibits any outside 'person' from being 'with a jury while it is deliberating.'"[58] Yet, Appellant's arguments and proof mistakenly focus on whether the alternate participated in the "ultimate verdict." The relevant issue, however, was whether that alternate juror's participation in the jury's deliberations was an outside influence on the jury. The only time an alternate juror can be said to participate in the

---

[57] *Id.* at 28.

[58] *Id.*

"ultimate verdict" is as an actual member of the jury, not as an alternate.

In *Trinidad*, the alternate jurors' participation in jury deliberations did not result in a constitutional or statutory violation of the requirement that a petit jury be composed of twelve people.[59]  That is because the alternate juror was never a member of the petit jury.  Nothing in the text of Article V, sec. 13 of the Texas Constitution or Article 33.01 mentions participation in the petit jury's "ultimate verdict" or suggests that an alternate juror becomes a member of that jury when he or she participates in the "ultimate verdict."  Suggesting that an alternate juror becomes a member of the petit jury through participation and deliberation is akin to saying that this Court consists of more than nine judges because staff attorneys assist in drafting opinions.[60]

As far as the text of the Texas Constitution and Code of Criminal Procedure are concerned, an alternate juror's participation in a jury's preliminary vote during deliberations has nothing to do with whether the trial court composed a petit jury of twelve people.  Our suggestion in

---

[59] *Id.*; *see also United States v. Olano*, 507 U.S. 725, 737 (1993) (presence of alternates in jury deliberations, with instructions not to participate, did not affect substantial rights of defendants).

[60] *See*, *e.g.*, Tex. Const. Art. 5 §4(a) ("The Court of Criminal Appeals shall consist of eight Judges and one Presiding Judge.")

*Trinidad* that there might be a constitutional or statutory violation of the twelve-person jury requirement if an alternate juror participates in the jury's "ultimate verdict" was unsupported dicta.  It was unnecessary to our disposition of the case, and we now expressly disavow it.

Given this understanding of the relevant constitutional and statutory provisions, we hold that the trial court did not violate Article V, sec. 13 of the Texas Constitution because the trial court unquestionably composed the petit jury of twelve people.  Likewise, we hold that Article 33.01(a), which codifies Article V, sec. 13's requirement for a jury of twelve persons, was not violated.  And finally, we hold that there was no violation of Article 33.011 as there does not appear to be any dispute that the selection of the alternate juror was made in accordance with Article 33.011.

In this case, the trial court impaneled a jury of twelve people consistent with the constitutional and statutory requirement that petit juries be composed of twelve people.  The trial court exercised its discretion to qualify an alternate juror consistent with Article 33.011(b). Each of these provisions appears to have been properly applied according to their terms.  We agree with the court of appeals that no constitutional or statutory violation of the twelve-person jury requirement occurred.

## Article 36.22 and Outside Influence

Our holding that the alternate juror's participation in deliberations does not rise to the level of a constitutional violation should not be taken as a suggestion that the alternate juror's presence with the jury during deliberations and participation in those deliberations was permissible. It was not. It violated Article 36.22 of the Code of Criminal Procedure. Article 36.22 provides that:

> No person shall be permitted to be with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.[61]

Article 36.22 has two prohibitions, the first disallows any person from being with a jury while it is deliberating and the second prohibits any person from conversing with a juror about the case on trial except in the presence and by permission of the court.[62] Both parts of the statute were violated in this case.

In *Trinidad*, we left open the question of whether alternate jurors constituted an outside person for purposes of Article 36.22's first prohibition provision.[63] We noted that, as amended, Article 33.011

---

[61] Tex. Code Crim. Proc. art. 36.22.

[62] *Id*.

[63] *Trinidad*, 312 S.W.3d at 28 n. 24 (concluding that the defendant forfeited the 36.22 statutory claim).

"does not indicate whether the alternate juror should be allowed to be present for, and to participate in, the jury's deliberations, or instead, whether he should be sequestered from the regular jury during its deliberations until such time as the alternate's services might be required."[64]   To date, the question of whether an alternate juror's presence violates the first provision of Article 36.22 has not been definitively answered.[65]   As we noted above, nothing in the statutory provision governing the use of alternate jurors transforms an alternate juror into a member of the regular jury prior to an alternate juror's replacement of a regular juror.   Only then does an alternate juror become a member of the regular jury. If we were to regard alternate jurors as members of the regular jury, then statutory provisions that govern how an alternate juror "replaces" a disabled juror would be rendered meaningless.[66]

---

[64] *Id.* at 24; *see also Becerra*, 2022 WL 1177391, at *5 (declining to find the trial court abused its discretion absent an explicit rule that an alternate juror's presence in the jury room is "absolutely improper").

[65] *But see Laws v. State*, 640 S.W.3d 227, 231 (Tex. Crim. App. 2022) ("A claim that the presence of an alternate juror while the jury deliberates violates Article 36.22 is not the same sort of claim as an allegation of juror misconduct during deliberations."); *Becerra*, 2022 WL 1177391, at *2 (noting the Court in *Trinidad* declined to determine whether the presence of an alternate juror during deliberations violated Article 36.22).

[66] Tex. Code Crim. Proc. art. 33.011(b) ("Alternate jurors in the order in which they are called *shall replace* jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties. . .")(emphasis added); *see also* Tex. Code Crim. Proc. art. 36.29(b) ("If alternate jurors have been selected in a capital case . . . and a juror

Notably, at the time Article 36.22 was enacted in 1965, there was no statutory provision allowing for the selection and use of alternate jurors. In its original form, Article 36.22's use of the terms "jury" and "juror" necessarily contemplated the regular jury and regular jurors, not alternates.[67] When the statute used the word "jury" it was referring to the regular jury of twelve people. When the statute used the word "juror" it was referring to a member of the regular jury. The statute's use of the word "juror" could not have been a reference to an alternate juror because the statute allowing for the use of alternate jurors did not exist. Even after Article 33.011 was enacted in 1983, this understanding of the terms held true because alternate jurors were specifically discharged before deliberations. It was only after the amendment to 33.011 in 2007 that the danger of an alternate juror deliberating with

---

dies or becomes disabled from sitting at any time before the charge of the court is read to the jury, the alternate whose named was called first . . . shall replace the dead or disabled juror"); Tex. Gov't Code § 62.020(d) ("In the order in which they are called, alternate jurors shall replace jurors . . ."); *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012) ("In interpreting statutes, we presume that the Legislature intended for the entire statutory scheme to be effective."); *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011) ("we read words and phrases in context and construe them according to the rules of grammar and usage"). Therefore, we must read the statute to give effect to the word "replace" in context of the entire statutory scheme. *See* New Oxford Dictionary (3rd Ed. 2010) (defining "remove" as "eliminate or get rid of" and defining "replace" as "fill the role of (someone or something) with a substitute").

[67] Tex. Code Crim. Proc. art. 33.011 (1983), *amended by* Acts 2007, 80th Leg., ch. 846, § 1 (eff. Sept. 1, 2007).

the regular jury arose.[68]  Even then, the statute's silence regarding what trial courts should to do with alternate jurors while the jury is deliberating does not suggest that the amendments to article 33.011 altered the meaning of the statutory terms, "jury" or "juror."[69]  More importantly, Article 33.011 and its subsequent amendment do not include an exception to Article 36.22's prohibition on persons being with a jury while it is deliberating to allow alternate jurors to participate in those deliberations.  We now hold that the presence of an alternate juror with the jury while it is deliberating violates the first provision of Article 36.22.

Turning to Article 36.22's second prohibition provision, we have recognized that "[t]he primary goal of Article 36.22 is to insulate jurors from outside influence."[70]  Outside influence cases under Article 36.22

---

[68] *Id.*

[69] *See Shapiro v. United States*, 335 U.S. 1, 31 (1948) (statute susceptible of either of two opposed interpretations must be read in the manner which effectuates rather than frustrates the major purpose of the legislative draftsmen); s*ee also State v. Brent*, 634 S.W.3d 911, 913 (Tex. Crim. App. 2021) ("Prolonged inaction by the Legislature in the face of a judicial interpretation of a statute implies approval of that interpretation. Its re-enactment of a law without change in its verbiage is regarded as a legislative adoption of prior judicial interpretations of said law. We generally give little weight to later legislative enactments when interpreting a prior law.") (internal quotations removed).

[70] *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (citing *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex. Crim. App. 1983) (considering the second provision and concluding Article 36.22's "main purpose is to prevent *an outsider* from saying anything that might influence a juror") (emphasis in the original)).

often involve jurors discussing the case with unauthorized people outside of the jury room.[71] Having concluded that an alternate juror is an outside person for purposes of Article 36.22, we have little trouble concluding that the participation of the alternate juror in this case, including casting a vote during the initial deliberations, constituted an impermissible conversation with the jurors about the case on trial, which did not occur in the presence of the court.

This is not to suggest that outside individuals are free to speak with alternate jurors about the case on trial or that a trial court cannot prohibit communications with alternate jurors about the case on trial. Under the statute, alternate jurors are qualified just as regular jurors are.[72] So, as with regular jurors, a citizen may be unable to serve as an alternate juror if he or she has outside knowledge of the case that might give rise to a valid challenge for cause.[73] Additionally, the

---

[71] *See Chambliss*, 647 S.W.2d at 263-66 (considering a juror's conversation with one of the victim's sisters during break in the trial but finding no error where the record did not show the conversation concerned the case on trial); *Ocon*, 284 S.W.3d at 885 (juror's telephone conversation with an unknown person regarding the case on trial, which was overheard by defense counsel and occurred in the presence of another juror likely violated Article 36.22's prohibition on conversing with a juror).

[72] Tex. Code Crim. Proc. art. 33.011(b) ("Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors.").

[73] Tex. Code Crim. Proc. art. 35.16 ("A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury.").

statutory prohibition against conversing with a juror still applies in a situation in which someone converses with an alternate juror who later replaces a member of the jury. In that situation, the juror still had a conversation about the case on trial without the trial court's permission and outside the court's presence even though the conversation took place when the juror was simply an alternate juror. And nothing in this opinion should be construed to prevent a trial court from holding a person in contempt for violating an order not to speak with jurors or alternates about the case on trial.[74]

We have recognized that a violation of Article 36.22's prohibition on conversing with a juror about the case on trial, once proven by the defendant, raises a rebuttable presumption of injury that may warrant a mistrial.[75] Appellant asks us to consider the propriety of the court of appeals' failure to apply that presumption. Having determined that both

---

[74] Tex. Code Crim. Proc. Art. 36.23 ("Any juror or other person violating the preceding Article shall be punished for contempt of court by confinement in jail not to exceed three days or by fine not the exceed one hundred dollars, or by both such fine and imprisonment."); Tex. Gov't Code Ann. § 21.002.

[75] *Chambliss*, 647 S.W.2d at 265-66 ("Although it is 'generally presumed that a defendant is injured whenever an empaneled juror converses with an unauthorized person about the case,' the defendant has the burden 'to establish that if a conversation did occur . . . the discussion involved matters *concerning the specific case at trial*.'") (emphasis in the original); *Ocon*, 284 S.W.3d at 885 (reporting violating conversation raised rebuttable presumption of injury); *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016) ("Once proven, a violation of Article 36.22 triggers a rebuttal presumption of injury to the accused, and a mistrial may be warranted.").

provisions of Article 36.22 were violated, we turn now to the issue of the rebuttable presumption of harm.

## Rebuttable Presumption of Harm

The court of appeals concluded that any violation of Article 36.22 was harmless because the alternate juror's presence and participation in initial voting with the jury was not sufficient to create a "reasonable probability that the alternate's outside influence had a prejudicial effect on the 'hypothetical average juror.'"[76]  Appellant alleges in his third issue that the court of appeals erred by failing to apply a rebuttable presumption of harm as a result of the Article 36.22 violation.  The State argues that if a rebuttable presumption of harm was triggered by an Article 36.22 violation, the record establishes that the presumption is rebutted and the error was harmless.

Ultimately, we disagree that the court of appeals was required to couch its analysis in terms of a rebuttable presumption of harm.  To the extent that the rebuttable presumption of harm for a violation of Article 36.22 has ever been applied in practice, this case provides a good example of why it is misleading to cast the harm analysis for violations of Article 36.22 in terms of a rebuttable presumption of harm.  In 1919,

---

[76] *Becerra*, 2022 WL 1177391, at *5.

this Court first recognized this presumption of harm in *Mauney v. State*

stating:

> We think the rule in cases of a violation of the provisions of article 748 [which "forbid any one from being with the jury while they are deliberating on a case and from communicating with a juror after he has been impaneled, except in the presence and by permission of the court"] ought to be that injury in such a case is presumed unless the contrary is made to appear to the satisfaction of the court, the trial court primarily, and ultimately this court. Any presumption can be overcome by evidence, and in such case of presumptive injury the burden ought to be on the state to satisfy the court that no injury has resulted from such violation of the statute.[77]

The Court in *Mauney* appears to have been concerned with assuring a

fair trial, avoiding the appearance of impropriety by strict observance of

the rule, and authorizing a juror to remain on a case even when the

juror may fail to accurately recall improper conversations with a non-

juror "by virtue of a convenient memory."[78]  These are all significant

concerns, to be sure.  But our reference in *Mauney* to a rebuttable

presumption was otherwise unsupported.

In a later case, we noted the presumption "is rebuttable; and on

motion for new trial, if the State negates this presumption by showing

---

[77] *Mauney v. State*, 210 S.W. 959, 963 (Tex. Crim. 1919) (concluding that the presumption of injury was overcome "by the evidence showing what the conversations were, and that no fact bearing on the case was discussed between the juror and his wife").

[78] *Id.* at 962-63.

that either the case was not discussed or that nothing prejudicial to the accused was said, then the verdict should be upheld."[79]  In this way, the presumption of harm appears to only apply to a violation of Article 36.22's prohibition on conversing with a juror about the case on trial and not to an unauthorized person simply being present with the jury.[80] More importantly, the ultimate question in considering whether the presumption has been rebutted appears to boil down to whether the statutory violation had an injurious effect on the jury.  In practice, our reference to a presumption of harm appears no different than a mere recognition that error occurred, and the rebuttable nature of the presumption describes the necessity of conducting a harm analysis regarding that error.

Given the circumstances in which we have held that the presumption has been rebutted, casting a harm analysis in terms of a rebuttable presumption of harm is unnecessary.  That is because the inquiry ultimately focuses on whether the alternate juror's intrusion into

---

[79] *Williams v. State*, 463 S.W.2d 436, 440 (Tex. Crim. App. 1971).

[80] *See, e.g., Ocon*, 284 S.W.3d at 885 (reporting the conversation with a juror, which took place in violation of Article 36.22's second provision, raised a rebuttable presumption); *Laws v. State*, No. 06-19-00221-CR, 2022 WL 2811958, at *5-6 (Tex. App. —Texarkana July 19, 2022) (not designated for publication) (citing *Ocon* and *Hughes* to conclude that the presumption applies only to the second provision of Article 36.22).

jury deliberations affected those deliberations and thereby the verdict.[81] For example, in *Quinn v. State*, a juror had a phone conversation with a co-worker mid-trial, that was recorded, in which he discussed the case on trial.[82] The defendant filed a motion for a new trial, which was ultimately denied after a hearing.[83] We noted that "[w]hen a juror converses with an unauthorized person about the case, 'injury to the accused is presumed' and a new trial may be warranted. However, the State may rebut this presumption of harm."[84] Ultimately, we affirmed the denial of the motion for new trial because the evidence established that the juror did not relay the conversation with his co-worker to any other members of the jury, and that the conversation did not otherwise impact the juror's deliberations.[85] Put in terms of a traditional harm analysis, we appear to have recognized in *Quinn* that error occurred in the form of a conversation between a juror and an unauthorized person,

---

[81] The United States Supreme Court made essentially the same observation in *United States v. Olano*, when it rejected the contention that there should be a presumption of prejudice arising from an alternate juror's presence during jury deliberations. *Olano*, 507 U.S. at 739. As the Court noted, "[A] presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?" *Id.*

[82] *Quinn v. State*, 958 S.W.2d 395, 397 (Tex. Crim. App. 1997).

[83] *Id.* at 399.

[84] *Id.* at 401.

[85] *Id.* at 402.

but we effectively held that the error was harmless because we had fair assurance from the record that the conversation did not affect the jury's verdict.[86]

In the context of a motion for mistrial, we have held that the State rebutted the presumption of harm by submitting that the account of the improper conversation could not be verified and that the jury had been instructed not to talk about the case.[87]  In that case, defense counsel overheard one side of a juror's telephone conversation while defense counsel was in the restroom with another juror; defense counsel reported the conversation, in which the juror spoke negatively about the trial, to the judge and requested a mistrial.[88]  Although we found that reporting the conversation to the judge raised a rebuttable presumption of harm, we also noted that the defense had not presented evidence that either juror received any new or outside information as a result of the phone conversation.[89]  We concluded that "the paramount issue is

---

[86] *Id.; Stredic v. State*, 663 S.W.3d 646, 655 (Tex. Crim. App. 2022) ("Because the error at issue is solely a statutory violation, the Rule 44.2(b) standard of harm for nonconstitutional errors governs the analysis. Under that standard, an error that does not affect substantial rights must be disregarded . . . an error does not affect substantial rights if an appellate court has fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect.").

[87] *Ocon*, 284 S.W.3d at 885.

[88] *Id*. at 882.

[89] *Id.* at 887.

whether Appellant received a fair and impartial trial, and therefore the analysis must focus on whether the juror was biased as a result of the improper conversation."[90]  We held that the trial court did not abuse its discretion in denying the motion for mistrial even though the State never presented any evidence to rebut the presumption of harm from the unauthorized communication with the juror.[91]

Further, the rebuttable presumption's placement of "burdens" upon the parties appears at odds with our later promulgation and application of Rule 44.2(b).  Rule 44.2 separates, for purposes of a harm analysis, the standard for constitutional and non-constitutional errors.[92]  We have held that "it is the responsibility of the appellate court to assess harm after reviewing the record and that the burden to demonstrate whether the appellant was harmed by a trial court error does not rest on the appellant or the State."[93]  In assessing harm, there is no burden

---

[90] *Id.*

[91] *Id.* at 885-88 (concluding the presumption of harm was rebutted by the fact that the jurors had been instructed not to discuss the case, the conversation could not be verified, and noting questioning of the jurors should have been at the defense's behest).

[92] Tex. R. App. P. 44.2.

[93] *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001) (adopting the Supreme Court's reasoning in *O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) ("it is still the responsibility of the … court, once it concludes there was error, to determine whether the error affected the judgment. It must do so without benefit of such aids as presumptions or allocated burdens or proof that expedite fact-finding at the trial") and noting Rule 44.2(b) is based on Federal Rule of Criminal Procedure 52(a)).

on either party to prove harm or harmlessness resulting from the error.[94]

That neither party bears a burden in assessing harm is particularly appropriate here given that neither party bears responsibility for the error of allowing the alternate juror to participate in part of the jury deliberations. Rather, an established violation of Article 36.22 should be reviewed for harm by the appellate court based upon a review of the record to determine whether the error had a substantial and injurious effect in determining the jury's verdict.[95] Neither party bears a burden because it is the duty of the courts to determine whether the record as a whole shows the outcome of the proceeding was influenced by the error.[96] Given that a harm analysis is more of a systemic requirement that ensures the reliability of the verdict based upon a review of the entire record, burdens of persuasion are not appropriate.[97]

---

[94] *VanNortick v. State*, 227 S.W.3d 706, 709 (Tex. Crim. App. 2007).

[95] *Maciel v. State*, 631 S.W.3d 720, 726 (Tex. Crim. App. 2021) (Newell, J., concurring) ("the Court should recognize that an evaluation for harm flowing from error is as much as systemic requirement as determining whether that error has been preserved").

[96] *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002) ("Neither the appellant nor the State have any formal burden to show harm or harmlessness under Rule 44.2(b).").

[97] We note that harm analysis on direct review differs in this respect from the burden to establish prejudice upon collateral review in a writ of habeas corpus. *See Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000); *Ex parte Parrott*, 396 S.W.3d 531, 534 n. 6 (Tex. Crim. App. 2013); *Cf. Maciel*, 631 S.W.3d at 726 (Newell, J., concurring) (noting, on direct appeal, the reviewing court makes its own assessment of harm independently of the arguments of the parties).

Discontinuing reference to a rebuttable presumption is also consistent with the harm analysis applicable to other species of outside influence claims. We have recognized, for example, that an outside influence is problematic only if it has the effect of *improperly* affecting a jury's verdict in a particular manner for or against a particular party.[98] And we have held that courts conduct an objective analysis to determine whether there is a reasonable possibility that the outside influence had a prejudicial effect on the hypothetical average juror in order to determine whether a juror affidavit regarding the outside influence is admissible under Rule 606(b).[99] Notably, we have not couched our harm analysis in these types of outside influence cases in terms of the creation and rebuttal of a presumption of harm.

Likewise, in considering a statutory violation of the right to have a verdict returned by a jury of twelve, we have analyzed the question of harm without resort to a rebuttable presumption.[100] In *Chavez v. State*,

---

[98] *Colyer*, 428 S.W.3d at 129 (outside pressures on jury were neutral when "they were not intended to persuade a juror to decide this case in any particular manner even if they might have influenced the jury to reach a verdict more quickly").

[99] *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012). We note that it is pursuant to this standard that the court of appeals concluded that a violation of Article 36.22, if any, was harmless. *Becerra*, 2022 WL 1177391, at *5. It appears the court of appeals conflated the standard for admissibility under Rule 606(b) with the harm analysis for a violation of Article 36.22.

[100] *See Chavez v. State*, 91 S.W.3d 797, 801 (Tex. Crim. App. 2002).

a juror became disabled from service after the jury reached a verdict but before it was announced in court.[101]  Over the defendant's objection, the trial court received the verdict from the eleven remaining jurors in violation of Article 36.29's requirement that, after the jury charge is read to the jury, if a juror becomes disabled the jury must be discharged except by agreement of the parties to have the remaining eleven members render a verdict.[102]  Concluding that the decision to proceed with the trial over the defendant's objection did not implicate the constitutional right to a jury of twelve, we held that a pure statutory violation of Article 36.29 was subject to harm analysis under Rule 44.2(b).[103]

We now conclude the same harm standard applies to a violation of Article 36.22 and referring to that analysis in terms of a rebuttable presumption of harm is inappropriate.  Our description of this presumption was unnecessary and unsupported at the time and pre-dates our promulgation of rules regarding harmless error.  Further, it has led to inconsistent application across related types of error.  In

---

[101] *Id.* at 798.

[102] *Id*. at 800; Tex. Code Crim. Proc. art. 36.29(c).

[103] *Id*. at 801; Tex. R. App. P. 44.2(b) ("[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").

short, the justification for this language was poorly reasoned and has proven unworkable.[104]  To the extent it is necessary, we expressly disavow the language in *Mauney* and its progeny purporting to apply a rebuttable presumption of harm to violations of Article 36.22.

## Rule 44.2(b)

We also disagree that we should adopt a categorical approach to the assessment of harm rather than a specific inquiry into whether the record reveals harm.  We disagree that an alternate juror's participation in jury deliberations results in structural error depending on the degree of the alternate juror's participation.[105]  We also disagree with the suggestion that an alternate juror's participation in jury deliberations always inures to the benefit of the defense.  Instead, we hold that the appropriate standard for evaluating harm when an alternate juror participates in jury deliberations in violation of Article 36.22 is the standard for non-constitutional error found in Rule 44.2(b).

We held in *Cain v. State* that no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory

---

[104] *See Paulson v. State*, 28 S.W.3d 570, 571-72 (Tex. Crim. App. 2000) (citing *Proctor v. State*, 967 S.W.2d 840, 845 (Tex. Crim. App. 1998) ("when governing decisions of this Court are unworkable or badly reasoned, we are not constrained to follow precedent").

[105] *See Lake v. State*, 532 S.W.3d 408, 411 (Tex. Crim. App. 2017) (recognizing that only federal constitutional errors labeled structural from the United States Supreme Court are immune to a harmless error analysis); *see also Olano*, 507 U.S. at 739.

requirement, is categorically immune from a harm analysis unless it amounts to federal constitutional error that has been labeled as structural by the United States Supreme Court.[106] The United States Supreme Court has affirmatively rejected the argument that a violation of a rule prohibiting an alternate juror from being with the jury during jury deliberations is structural error. We reach the same conclusion.

In *United States v. Olano*, the Court considered a case in which two alternate jurors had retired to deliberate with the jury though they did not participate in jury deliberations.[107] In deciding that an evaluation for harm was appropriate, the Court noted that cases in which significant intrusions upon the jury's deliberative process were evaluated for the prejudicial effect of those intrusions.[108] Given that precedent, the Court reasoned that an evaluation for harm was appropriate for an alternate juror's presence during jury

---

[106] *Cain v. State*, 947, S.W.2d 262, 264 (Tex. Crim. App. 1997).

[107] *Olano*, 507 U.S. at 727-30.

[108] *Id.* at 739. As the Supreme Court observed, "[w]e cannot imagine why egregious comments by a bailiff to a juror (*Parker*) or an apparent bribe followed by an official investigation (*Remmer*) should be evaluated in terms of "prejudice," while the mere *presence* of alternate jurors during jury deliberations should not." *Id*.; *see also Parker v. Gladden*, 385 U.S. 363, 365 (1966) (holding that bailiff's comments to a juror that the defendant was a "wicked fellow" who was "guilty" materially affected the rights of the defendant because the comments were overheard by at least one juror or an alternate); *Remmer v. United States*, 347 U.S. 227, 229-30 (1954) (holding that defendant was entitled to hearing to determine effect of F.B.I. investigation in to allegation that someone had attempted to bribe a juror in a criminal case).

deliberations.[109]  Moreover, the Court rejected the suggestion that prejudice should be presumed, noting that "a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?"[110]

Notably, Justice Stevens authored a dissenting opinion to argue that the error should be treated as affecting the system as a whole based in part upon his view that it was difficult to measure the effect of the error on jury deliberations.[111]  According to Justice Stevens, allowing alternate jurors into the jury room violated the cardinal principle that the deliberations of the jury shall remain private and secret in every case.[112]  Further, he argued that this type of error affected the structural integrity of the criminal tribunal itself.[113]  But the Court rejected these arguments, quoting *Smith* v. *Phillips* to explain the Court's "intrusion" jurisprudence:

> "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally

---

[109] *Olano*, 507 U.S. at 739.

[110] *Id.*

[111] *Id.* at 743-44 (Stevens, J., dissenting).

[112] *Id.*

[113] *Id.*

acceptable . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."[114]

Ultimately, in *Olano*, the Supreme Court did not treat the presence of an alternate, or even the specter of some chilling conduct by the alternate juror's presence, as "structural error" that defies a harm analysis.[115] Instead, the Court determined that the error was the type of error that is susceptible to a harm analysis that can be undertaken to determine the effect of the error upon the jury's verdict. We agree. That some errors may involve a greater intrusion upon the jury's deliberative process only suggests the error may be harmful, not that the error is categorically immune from a harm analysis.

Conversely, we also disagree that allowing an alternate juror to participate in jury deliberations would always inure to the benefit of the defense. To be sure, the Supreme Court in *Olano* noted when analyzing harm that the alternate jurors in that case were essentially indistinguishable from the regular jurors.[116] The Court also noted that

---

[114] *Id*. at 738 (majority opinion) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

[115] *Id.* at 740.

[116] *Id.*

the alternates received the same initial admonishments not to consider the case on evidence outside the record.[117]  The Court relied upon these facts among others when making its determination in *Olano* that the alternate's presence during jury deliberations was harmless.[118]

However, the Court also noted that the alternate jurors had been instructed not to participate in jury deliberations.[119]  And the Court held that the court of appeals erred to speculate that the alternate jurors contravened that instruction.[120]  In so holding, the Court implies that a greater degree of involvement by the alternate jurors in the jury's deliberative process might not be so easily dismissed as harmless error.[121]

While we have not considered a violation of Article 36.22 with a comparable degree of involvement by an alternate juror, we have

---

[117] *Id.*

[118] *Id.* at 741.

[119] *Id.* at 740.

[120] *Id.*

[121] In *Olano*, the Court noted that theoretically an alternate juror's presence during jury deliberations might prejudice a defendant in two different ways, namely participating in deliberations verbally or through body language or by exerting a "chilling" effect on regular jurors by virtue of the alternate juror's presence.  *Id.* at 739.  The Court cited to two federal cases as support for this conclusion, both of which observed that an alternate's participation in jury deliberations could be deemed prejudicial to a defendant under a harm analysis for non-constitutional error.  *Id.* (citing *United States v. Watson*, 669 F.2d 1374, 1391 (11th Cir. 1982) and *United States v. Allison*, 481 F.2d 468, 472 (5th Cir. 1973)).

considered a case which at least illustrates how a single person in the jury room can impact jury deliberations to the detriment of the defense. In *Scales v. State*, we considered a case in which the trial court removed a member of the regular jury as disabled because that juror refused to deliberate with the rest of the jury because she believed the State had not proven its case beyond a reasonable doubt.[122] We held that removing that juror and replacing her with an alternate juror was a statutory error that affected the defendant's substantial rights.[123] We specifically noted that as soon as the judge erroneously replaced the hold-out-juror, the jury returned a guilty verdict, clearly demonstrating that the erroneous removal had a substantial and injurious influence in determining the jury's verdict.[124] Indeed, in that situation a single alternate juror's participation resulted in harm to the defendant because the removal of a member of the regular jury who was not disabled affected the defendant's substantial rights.[125]

---

[122] *Scales*, 380 S.W.3d at 781-82.

[123] *Id.* at 786-87.

[124] *Id.*

[125] *Id.*; *see also Williams*, 399 U.S. at 101 ("It might be suggested that the 12-man jury gives a defendant a greater advantage since he has more 'chances' of finding a juror who will insist on acquittal and thus prevent conviction. But the advantage might just as easily belong to the State, which also needs only one juror out of twelve insisting on guilt to prevent acquittal.").

Ultimately, harm in a case in which an alternate juror participates in jury deliberations with a lawfully composed jury of twelve depends upon what the record reveals about the alternate juror's involvement in jury deliberations.[126] There is no question that the trial court impaneled a "legal jury" of twelve jurors.[127] Rather, the question is how the alternate juror's participation in deliberations with that lawfully composed jury affected the proceedings. If an examination of the entire record reveals that the alternate juror's participation in jury deliberations had a substantial or injurious effect in determining the jury's verdict, then it can be said that the error affected the defendant's substantial rights and cannot be disregarded. But the Court cannot recast the error at issue to require the application of a particular harm standard (or the abandonment of a harm analysis altogether) to reach a desired outcome.

---

[126] Other jurisdictions have analyzed an alternate juror's participation in jury deliberations for harm further suggesting that such an analysis is appropriate in these circumstances. *See, e.g.*, *James v. People*, 426 P.3d 336, 341 (Colo. 2018) ("Like all errors in the trial process that do not amount to structural error, whether an intrusion or outside influence on jury deliberations should be disregarded as harmless must depend upon an evaluation of the likelihood that the outcome of the proceedings in question was adversely affected by the error."); *McAdams v. State*, 75 P.3d 665, 668 (Wyo. 2003) ("We evaluate whether the alternate juror's presence in the jury room during the jury's deliberations prejudiced the defendant, and also whether the court acted or utilized sufficient procedural safeguards to 'obviate the danger of prejudice to the defendant.'") (quoting *Alcalde v. State*, 74 P.3d 1253, 1258 (Wyo. 2003)); *Sanchez v. State*, 794 N.E.2d 488, 491 (Ind. Ct. App. 2003) (mistrial may be warranted based on alternate deliberating with the jury if the conduct was "both error and had a probable persuasive effect on the jury's decision").

[127] *Stell*, 14 Tex. App. 59, 60 (1883).

Rule 44.2(b) of the Rules of Appellate Procedure sets out the proper standard for analyzing whether non-constitutional error resulted in harm.[128]  Under this standard, any non-constitutional error that does not affect substantial rights must be disregarded.[129]  An error affects substantial rights only if it has a substantial or injurious effect in determining the jury's verdict.[130]  If, on the other hand, after an examination of the record as a whole we have a fair assurance that the error did not influence the jury, or had but a slight effect, a reviewing court should not overturn the conviction.[131]  To the extent that Appellant argues that a reviewing court should consider whether the alternate juror improperly participated in the jury's ultimate verdict, that is a factor that should be considered when evaluating whether the violation of Article 36.22 affected Appellant's substantial rights.[132]

---

[128] Tex. R. App. P. 44.2(b).

[129] *Id*.; *accord Gray v. State*, 159 S.W.3d 95, 98 (Tex. Crim. App. 2005) ("In summary, when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis . . .").

[130] *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)).

[131] *Id.*

[132] *Trinidad*, 312 S.W.3d at 28 (noting that an alternate juror's participation in jury deliberations is more usefully considered as a claim that the alternate juror brought an outside influence to bear on the jury).

In this case, the court of appeals does not appear to have done a complete harm analysis having concluded that the alternate's presence during jury deliberations was not error.[133] It also did not have the benefit of our discussion regarding the applicable harm standard. Moreover, it appears to have addressed the issue of harm in the context of the alternate juror's prejudicial effect on a "hypothetical average juror."[134] In doing so, it seems to have conflated the inquiry into whether there was an outside influence, for purposes of determining admissibility of juror affidavits regarding an outside influence, with the inquiry into whether there was harm from the violation of Article 36.22.[135] Instead, the court of appeals should have examined the record as a whole to determine whether the error affected Appellant's substantial rights. Because it did not, we will remand the case for the court of appeals to conduct a harm analysis pursuant to Rule 44.2(b). As this standard requires examination of the record as a whole, we must address Appellant's claim regarding the admissibility of the juror

---

[133] *Becerra*, 2022 WL 1177391, at *5 ("As to the other alleged statutory violations, primarily article 36.22 regarding the presence of outsiders with the jury during deliberations, we have found no authority that has established a hard rule that the presence of the alternate jurors in the jury room during deliberations is absolutely improper.").

[134] *Becerra*, 2022 WL 1177391, at *5.

[135] *Id.*

affidavit under Rule 606(b) of the Rules of Evidence to determine if the entire affidavit can be considered by the court of appeals.

## Rule 606(b)

As the United States Supreme Court has recognized, the near-universal and firmly established common-law rule in the United States flatly prohibits the admission of juror testimony to impeach a jury verdict.[136]  However, Rule 606(b) of the Rules of Evidence permits juror testimony relating to improper outside influence.  Rule 606(b) states:

**(b)  During an Inquiry into the Validity of a Verdict or Indictment.**

**(1) Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

**(2)  Exceptions.**  A juror may testify:

**(A)**  about whether an outside influence was improperly brought to bear on any juror; or

**(B)**  to rebut a claim that the juror was not qualified to serve.[137]

---

[136] *Tanner v. United States*, 483 U.S. 107, 117 (1987) (holding that an evidentiary hearing in which jurors would testify on juror alcohol and drug use during trial was barred by rule of evidence prohibiting juror impeachment of jury verdict).

[137] Tex. R. Evid. 606(b).

The court of appeals upheld the admissibility of the portion of the affidavit indicating that the alternate juror voted during deliberations but was removed from the jury room before the ultimate verdict.[138] However, it held that the portion of the juror's affidavit indicating that a subsequent vote was not taken once the court removed the alternate juror was not admissible pursuant to Rule 606(b).[139] The court of appeals reasoned that this portion did not involve evidence regarding the outside influence or its impact on any juror or the deliberations.[140] Whether an affidavit is admissible pursuant to Rule 606(b), is reviewed under an abuse of discretion standard like other evidentiary rulings.[141]

We do not agree with the court of appeals' conclusion that only a part of the affidavit is admissible because the admissibility of the entire affidavit falls within the zone of reasonable disagreement. In *McQuarrie v. State*, we considered what constituted an "outside influence" for purposes of admissibility under Rule 606(b).[142] *McQuarrie* was a sexual

---

[138] *Becerra*, 2022 WL 1177391, at *4.

[139] *Id.*

[140] *Id.*

[141] *McQuarrie*, 380 S.W.3d at 155; *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) ("An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review.").

[142] *McQuarrie*, 380 S.W.3d at 150-55.

assault case in which a trial court relied upon Rule 606(b) to exclude juror affidavits regarding internet research that a juror shared with the rest of the jury.[143]  Specifically, two jurors submitted affidavits that a third juror had conducted internet research into the effects of a date rape drug and shared it with other jurors the next morning.[144]  We held that the juror affidavits were admissible because the content included an inquiry into how the internet research affected the jury's verdict without delving into its deliberations.[145]  In reaching our conclusion, we explained that the 606(b) inquiry is limited to that which occurs outside the jury room and outside of the juror's personal knowledge and experience.[146]

In this case, the second part of the affidavit seems to have dealt with jury deliberations.  The affidavit avers that the jury did not take a subsequent internal vote after the alternate juror was removed from the

---

[143] *Id*. at 148.

[144] *Id*.

[145] *Id*. at 154 ("[A] trial court should be able to inquire as to whether jurors received such outside information and the impact it had on their verdict without delving into their actual deliberations. This can be done by making an objective determination as to whether the outside influence likely resulted in injury to the complaining party—that is, by limiting the questions asked of the jurors to the nature of the unauthorized information or communication and then conducting an objective analysis to determine whether there is a reasonable possibility that it had a prejudicial effect on the 'hypothetical average juror.'").

[146] *Id*. ("[T]he plain language of Rule 606(b) indicates that an outside influence is something outside of both the jury room and the juror.") (citing *White v. State*, 225 S.W.3d 571, 574 (Tex. Crim. App. 2007)).

jury room and the trial court had instructed the jury to disregard the alternate juror's participation. [147]  However, the fact that no subsequent vote was taken after the alternate juror was removed from the jury room could have some bearing on whether the alternate juror's erroneous participation in jury deliberations had some effect on the jurors.  Like the affidavits at issue in *McQuarrie*, the affidavit in this case could have provided a small nudge to show that either the jury was affected by the alternate juror's previous participation or that the jurors followed the trial court's instructions to disregard the alternate juror's participation.[148]  Consequently, the court of appeals erred because the trial court's ruling admitting the entirety of the affidavit was not outside of the zone of reasonable disagreement.[149]  On remand, the court of appeals should consider the entire affidavit when evaluating whether the alternate juror's presence and participation during deliberations affected Appellant's substantial rights.

## Conclusion

---

[147] There is no indication in the affidavit, for example, that the alternate juror actively swayed the other jurors to a particular conclusion like Henry Fonda in the movie *12 Angry Men* or was largely ignored as a distraction like actor James Marsden in the recent Amazon Freevee series *Jury Duty*. 12 ANGRY MEN (Orion-Nova Productions 1957); *Jury Duty: Deliberations* (Amazon Studios April 21, 2023).

[148] *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990) (evidence need not by itself prove or disprove a particular fact to be relevant; it need only provide a small nudge).

[149] *McQuarrie*, 380 S.W.3d at 155.

The inadvertent presence and participation of the alternate juror in the jury's initial deliberations did not implicate Appellant's constitutional right to a jury of twelve people, or the statutory codification of that right in Article 33.01. Likewise, the alternate juror's presence and participation in a portion of jury deliberations did not run afoul of Article 33.011 because the alternate juror was properly discharged after the jury rendered its verdict.

However, the alternate juror's participation and presence during a portion of jury deliberations did violate Article 36.22's prohibition on unauthorized persons being present with the jury while the jury is deliberating, as well as Article 36.22's prohibition against conversing with the jury about the case. We remand this case for the court of appeals to analyze whether this non-constitutional error affected Appellant's substantial rights. On remand, the court of appeals should consider the entirety of the juror affidavit regarding the jury deliberations after the alternate juror had been excluded from the jury room to determine whether Appellant was harmed by the statutory violation.

Delivered: February 7, 2024

Publish